W. H. Lawrence, as Sheriff of Palm Beach County, v. Curtiss Goddard

168 So. 13.
Division A.
Opinion Filed May 6, 1936.

*Theo T. Turnbull* and *Claude Ogilvie,* for Plaintiff in Error;

*Hawthorne & Morehead,* for Defendant in Error.

Davis, J.—Curtiss Goddard was arrested at West Palm Beach, charged with a violation of Chapter 14764, Laws of Florida, Acts of 1931, in that he, as manager of the "U-Drive-It" Company at West Palm Beach, rented to one Ehehart for a valuable consideration one Plymouth automobile which was subsequently operated by Ehehart for the transportation of himself on State Road No. 4 to a point one mile north of Boca Raton, which is some twenty-five miles distant from West Palm Beach, without said "U-Drive-It" Company first having obtained a permit therefor from the Railroad Commission, and otherwise complying with said Chapter 14764.

Upon writ of habeas corpus issued by the Circuit Court, the petitioner Goddard was discharged upon the finding by

the Circuit Court that Chapter 14764, *supra,* is not sufficiently broad in its terms and provisions to comprehend a "U-Drive-It" business within its purview.

So the point to be decided on this writ of error is whether or not persons engaged in leasing or renting motor vehicles to individuals for the transportation of lessees and their guests over the public highways of the State, without furnishing drivers for the same, under a system of doing business customarily recognized as a "U-Drive-It" operation, are within the scope and intent of the regulatory provisions of Chapter 14764, Laws of Florida, Acts of 1931.

A stipulation of facts upon which the controversy was decided in favor of Goddard in the court below establishes the circumstances that the "U-Drive-It" Company owned and operated by Goddard possesses a number of automobiles of different makes and seating capacities commonly known as coupes and sedans; that it rents said coupes and sedans to others for a stipulated price per hour, per day, week or month; that said automobiles are rented to be driven by hirers or lessees thereof over the public highways of this State, but, however, without the furnishing of any driver or chauffeur for any such automobile on the part of the "U-Drive-It" Company, which completely relinquishes its control over the machine to the lessee or hirer *eo instanti* the act of leasing or hiring is accomplished; that Goddard, as manager for the "U-Drive-It" Company involved in this case, pursuant to the company's plan of business, rented a Plymouth passenger automobile to one Ehehart for a consideration, but with the understanding and stipulation that said Ehehart would take charge of and thereafter have complete and exclusive control over the hired automobile and would drive the same over the public highways of this state, where and when he pleased,

and that said Ehehart in the particular instance now before the Court, did drive the Plymouth automobile so leased to him to a point some twenty-five miles south of West Palm Beach, where he was apprehended by a Railroad Commission Inspector and forced to return the car to the "U-Drive-It" office at West Palm Beach. The arrest of Goddard, as manager of the "U-Drive-It" Company, grew out of the last mentioned circumstance.

It is the contention of the Railroad Commission, which, through its counsel, appeared and argued this case before the Supreme Court, that the prisoner should, before renting the automobile have: (1) posted an indemnity bond or insurance policy with the Railroad Commission; (2) paid the mileage tax set out in Chapter 14764, *supra;* (3) obtained from the Railroad Commission a permit to rent the automobile. In opposition to this contention is the one asserted by the defendant in error to the effect that inasmuch as the automobile in question was equipped with a "for hire" license tag that this was all the Florida law requires in the case of "U-Drive-It" Companies, and that consequently the "Motor Transportation Act," known as Chapter 14764, Acts of 1931, Laws of Florida, has no application to this case, because it does not embrace within its purview an automobile business carried on and conducted under the plan of operation commonly known as "U-Drive-It" Company.

We think that one proposition, if no other, is conclusive of the determination of the questions involved in this case in favor of the defendant in error. Section 1 (e) of Chapter 14764, which defines the kind of permit to be issued to "for hire operators," requires operators to be "carriers" who "operate automobiles over the public highways with for hire tags in transporting persons and property for compen-

sation." It thus appears that under Chapter 14764 that it is necessary, in order to bring a for hire concern within the purview of that Act that it not only operate its automobile, but also undertake to transport persons or property therein for hire as a *carrier*. Under the plan of operation of "U-Drive-It" concerns they neither operate their own automobiles nor undertake to transport persons or property therein as part of their business. On the contrary, they simply enter into a contract of bailment with an intended customer, which completely divorces the bailor from all further control or responsibility in connection with the operation of the automobile while it is in the hands of the bailee. See: White v. Holmes, 89 Fla. 251, 103 Sou. Rep. 623.

There is another reason why "U-Drive-It" concerns cannot be held within the purview of Chapter 14764, Acts of 1931. That is that the provisions of said Act are wholly unadapted for application to the plan of business necessarily involved in a "U-Drive-It" operation. Thus, Section 6 of the Act requires the giving of a form of bond by automobile transportation companies that is utterly at variance with the conditions of operation that would be applicable to a "U-Drive-It" concern. Furthermore, Section 12 imposes on automobile transportation companies holding permits, a restriction to the effect that no motor vehicle owned by it shall be operated on public highways in excess of the speed permitted by Florida law. This is obviously a regulation that could not be enforced against a "U-Drive-It" concern, because the "U-Drive-It" concern completely relinquishes control of motor vehicles leased by it until they are returned to the lessor. Consequently, it would be impossible for a "U-Drive-It" concern to be subject to the provision of Section 12 of the Act. An even more extreme

illustration of the utter inapplicability of Section 14764 to a "U-Drive-It" business is shown by the requirements of Section 19 of the Act. These requirements are to the effect that no automobile transportation company shall permit any driver or chauffeur to remain on duty for a longer period than twelve consecutive hours, etc. It is obvious that if Chapter 14764, *supra,* applies to "U-Drive-It" concerns there would be no way of enforcing this provision, except for "U-Drive-It" operators to refuse to lease automobiles to customers for longer periods than twelve hours at a time—a limitation that would utterly destroy the "U-Drive-It" business in many of its essential particulars, as it is customarily carried on in the State of Florida for the benefit of tourists and visitors who habitually rent cars for a week or month in order to travel about and see features of interest in the state during the tourist season.

The business of a "U-Drive-It" automobile concern is of special and peculiar nature. The laws of this state have always so recognized it—both by court decision and by statute. Compare: White v. Holmes, *supra;* Chapter 10182, Acts of 1925, Section 3. Originally "Drive It Yourself" automobiles rented or leased where no driver was furnished were classified, for purposes of motor vehicle taxation, as automobiles for "private use." The 1925 Act (Chapter 10182, *supra*) so regarded them.

The only change made by subsequent amendments to Section 1011 R. G. S., occurring after the 1925 Act was to place "Drive It Yourself" or "U-Drive-It" automobiles in the class of cars required to carry a "for hire" license tag instead of a "private use" tag. Not until the present case, which arose some five years after the enactment of Chapter 14764, Acts of 1931, does any contention appear to have been made on the part of the Railroad Commission

or by any other state agency to the effect that "U-Drive-It" automobile concerns have now become "Auto Transportation Companies" that must secure a permit for operation from the Railroad Commission and submit to regulations by it under Chapter 14764, Acts 1931, that are altogether inappropriate and inapplicable to such concerns.

We therefore hold with the Circuit Judge that Chapter 14764, Acts 1931, is not applicable to the "U-Drive-It" business of the defendant in error and therefore that defendant in error was properly discharged on habeas corpus from the attempted criminal charge lodged against him.

Affirmed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL, J., concur in the opinion and judgment.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—The writ of error brings for review judgment in habeas corpus proceedings discharging from custody the Petitioner, Curtiss Goddard.

Curtiss Goddard was informed against, the information charging that, "Curtiss Goddard of the County of Palm Beach and State of Florida on the 8th day of February in the year of our Lord one thousand nine hundred and Thirty-five in the County and State aforesaid, unlawfully did then and there let, rent and lease to another, for a consideration, a certain motor vehicle, to-wit: a Plymouth automobile, which said Plymouth automobile was then and there operated by the lessee thereof, upon a public highway of the State of Florida, to-wit: On Federal Highway No. 1, otherwise known as State Highway Number 4, for the transportation of persons, without having first obtained a permit from the State Railroad Commission, as required by law so to do."

The contention of plaintiff in error was, and is, that the information charges an offense as contemplated under the provisions of Chapter 14764, Acts of 1931.

It is established in this case by a stipulation of fact in effect that the Petitioner operated what is known as a "U-Drive-It" company; that he owned a number of automobiles of different makes and different seating capacities; that he rents these automobiles for a stipulated price per hour, day, week or month; that such automobiles are driven by the persons who hire them over the public highways of the State; that the "U-Drive-It" Company does not furnish a driver or chauffeur for any such automobile.

It is admitted that the Petitioner is manager of the "U-Drive-It" Company; that he rented the automobile described in the information to one Ehehart for a consideration with the understanding that he, the said Ehehart, would have complete and exclusive control over the said automobile and would drive same over the public highways of the State; that he did drive same over a public highway to a point some 25 miles south of West Palm Beach where he was met by an Inspector of the Railroad Commission and ordered to return. He did return and the manager of the "U-Drive-It" Company was arrested for violation of the statute above referred to.

Section 1 of that Chapter provides, amongst other things: "(h) The term 'Auto Transportation Company' when used in this Act means every corporation or person, their lessees, trustees or receivers, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over fixed rails, used in the business of transporting persons or property for compensation over any public highway in this State and shall specifically mean and include:

"1. Every such person or corporation owning, leasing,

using or exercising dominion over motor vehicles operated in common carriage of either persons or property for compensation over public highways over regular routes or on fixed schedules or between fixed termini.

"2. Every such person or corporation owning, leasing, using or exercising dominion over motor vehicles operated in the transportation of persons or property over public highways under contract or private carriage for compensation.

"3. Every person or corporation owning, leasing, using or exercising dominion over motor vehicles operated in the transportation of persons or property over public highways for hire, as defined in Section 1280, Compiled General Laws of 1927."

Section 2 of the Act provides as follows:

"Section 2. No auto transportation company shall operate any motor vehicle for the transportation of persons or property for compensation on any public highway in this State without first having obtained from the Railroad Commission a certificate of Public Convenience and Necessity or a Permit as hereinafter provided."

Section 1006 R. G. S., 1280 C. G. L., defines Motor vehicles "for hire," as follows:

" 'For hire' as defined in this Chapter shall include all motor driven vehicles, or trailers hauled by a motor vehicle, in use for transporting persons, commodities or materials for compensation, or such motor vehicles as may be let or rented to another for a consideration; Provided, that motor vehicles temporarily used by farmers for the transportation of agricultural or horticultural products from farms or groves to packing houses or to points of shipment by transportation companies shall not be held to be operating for hire; Provided, further, that motor vehicles used

for transporting school children to and from school under contract with school officials shall not be deemed to be in use for hire."

It will be noted that this definition includes "or such motor vehicles as may be let or rented to another for consideration."

Section 5 of Chapter 14764, *supra,* provides as follows:

"Section 5. No auto transportation company shall operate any 'for hire' motor vehicle on any public highway in this State. in the transportation of persons or property for compensation without first having obtained from the Railroad Commission a Permit, which permit shall issue as a matter of right and of course when the provisions of this Act and the laws of the State of Florida touching such motor vehicles operation have been complied with by the applicant. The permit so issued shall subject the applicant to the mileage tax imposed by this Act and to the rules and regulations of the Commission respecting the operation of such motor vehicles over State highways for compensation."

So, it appears that it was the legislative intent and specifically provided by legislative Act that automobiles operated on the public highway under the "U-Drive-It" plan outside of corporate limits should be subjected to the same regulations as are applicable to taxicab companies operating outside of corporate limits. I can see no reason why this should not be so. The public is entitled to the same protection by reason of the use of one on the highways as by reason of the use of the other. The "U-Drive-It" automobile is bing used on the public highway for profit of the owner just the same as the taxicab automobile is being used on the highway for the profit of the owner. They are both doing the business of carriers for compensation over the public highways.

The Legislature may define what automobiles come within the regulatory Act and unless it be held that the Legislature has not such power, then I see no escape from holding that it has so exercised such power as to make the Act applicable to the operation here under consideration. The Act in terms is applicable to every person or corporation * * * leasing * * * motor vehicles operated in the transportation of persons * * * over public highways for hire as *defined* in Sec. 1880 C. G. L. That Section reads, "For hire" * * * shall include all motor driven vehicles * * * or such motor vehicles as may be let or rented to another for a consideration.

The stipulation of facts brings the operation clearly within the purview of the Act and there is no contention that the Act is in excess of legislative power.

As I construe the statutes, they are applicable alike to both classes of automobile operation.

I think the judgment should be reversed and the cause remanded, with directions for further proceedings.