ORLANDO TRANSIT COMPANY, a corporation, v. FLORIDA RAILROAD AND PUBLIC UTILTIES COMMISSION.

37 So. (2nd) 321            June Term, 1948
July 16, 1948               Division A
Intervention denied en banc, October 29, 1948.
Rehearing denied November 1, 1948

*Baker & Thornal,* for petitioner.

*Lewis W. Petteway* and *R. Clyde Simmons,* for respondent.

On petitions for intervention:

*Parker, Foster & Wigginton and Clifford T. Inglis* for Southeastern Greyhound Lines, Inc.; *Milam, McIlvaine, Carroll & Wattles,* for Florida Greyhound Lines, Inc.; *A. Pickens Cole* for Modern Coach Corporation and for Tamiami Trail Tours, Inc.; *Kitchen & Schwartz* for Delcher Bros. Storage Co., Elder Moving & Storage Co., Fidelity Storage and Warehouse Co., Porter Transfer & Storage, Shaw Furniture & Transfer, Inc., Suddath Moving & Storage Co., (Tampa), Suddath Moving & Storage Co., Jacksonville, Washington Storage Co., Inc., Withers Van Lines, Florida Household Goods Carriers' Bureau; *Martin Sack* for Petroleum Carrier Corporation.

CHAPMAN, J.:

On December 6, 1947, the Orlando Transit Company, a Florida corporation with its principal place of business in the City of Orlando, Florida, by petition applied to the Florida Railroad and Public Utilities Commission for a permit authorizing it to operate two described motor busses "for hire" over the public highways of Florida. The petition was drafted under the several provisions of Section 323.05, F.S.A. (See Chapter 22, 842, Acts of 1945, Laws of Florida). On February 4, 1948, a public hearing on the application was held pursuant to notice and testimony received by the Commission in support of the material allegations of the petition, when the applicant closed its case. The respondent by appropriate order sustained a motion to dismiss the proceedings and a review of this order is sought here by petition for a writ of common law certiorari upon the theory that the challenged order constitutes a material departure from the essential requirements of the law.

In order to obtain a clear and accurate picture of the legal points in controversy it is necessary to set out in substance the material allegations of the petition before the respondent and the pertinent testimony offered in support thereof, neither of which was disputed on the record at the time the challenged order was entered. The petition alleged that the applicant was a corporation and engaged in the business of

operating an auto transportation company in transporting persons and property for compensation over the public highways of Florida and had been so engaged for fifteen years. It owns, controls, operates and manages a fleet of busses transporting passengers principally in Orange County, Florida, and particularly within the corporate limits of the cities of Orlando, Winter Park and Winter Garden, Florida. It holds Certificate of Public Convenience and Necessity No. 209 issued to it by the Railroad Commission, which authorizes it to operate its busses over the highways of the State of Florida from Orlando to Winter Garden, a few miles distant.

The petition requests the Railroad Commission to issue to the applicant a "for hire" permit for the purpose of carrying on a "for hire" business as defined by Section 320.01(16), F.S.A., but not a permit or Certificate of Public Conveyance and necessity authorizing it to operate over the public highways of Florida as a common carrier. The two busses or motor vehicles to be operated in the "for hire" service for which the permit or "for hire" license tags were sought under Section 323.05 supra are each fully described. The applicant proffered to keep such records as are prescribed by the Railroad Commission and State Comptroller, to keep mileage records required by Chapter 323, F.S.A., agreed to abide by the rules and regulations of the Commission as to type, size of equipment, safety appliances and devices, to observe the regulations as to loads which are now in effect and to comply with all reasonable regulations and rules to be later promulgated by the Railroad Commission. The applicant had previously filed with the Railroad Commission a policy of insurance in the sum of $225,000.00 for the protection of the public against injury caused by the applicant while negligently operating the two busses "for hire" on the public highways of Florida under Section 323.05 supra.

Sidney M. Swoope was sworn and testified as a witness in behalf of the applicant. He testified that he lived in the City of Orlando and was president and general manager of the Orlando Transit Company and that the company for about fifteen years had transported passengers "for hire" in Orlando and, under Certificate of Convenience No. 209, had

transported passengers over the highway from Winter Garden to Orlando. The Transit Company proposed operations viz:

"1. We propose to operate the two busses described in the petition with proper 'for hire' tags.

"2. We will offer these for hire for a fixed sum to be determined by hours in use and mileage.

"3. We propose to establish a travel bureau, which is a power and right we have by our corporate charter, and to use these two busses in connection with this travel bureau to transport clients of the bureau from Orlando, Florida, to points and places of interest throughout the State or to such places as they may propose visiting, with no pick-ups, and return carriage to point of origin.

"4. We propose to solicit persons through personal contact to visit places of interest throughout the state, and to use these two busses to transport these persons from Orlando, Florida, and return for a consideration.

"5. We propose to advertise on a 'share-expense basis' trips by bus from Orlando to general and tourist attractions throughout the state and return to Orlando.

"This entire operation will be carried on as contracts are made for the use of the vehicle for each trip and not under any general or continuing contract.

"We would not be offering public or indiscriminate transportation of the public. Our service would be limited to the busses with 'for hire' tags and for a consideration which would require almost full occupancy of the bus. These busses will be primarily 'for hire' equipment. If they are rented at the time anyone sought to rent a bus, we would necessarily have to advise the latter we did not have a bus to rent. Thus our operation is limited by our available equipment. We are offering, by the application applied for here and now, to conduct our operation under a 'for Hire' permit from this Commission, subject to reasonable and lawful regulation by this Commission and to pay the required mileage tax. We do, however, object to dedicating our property to public service as a common carrier for hire as a condition precedent to conducting the operation we propose.

"Q. Do you have two busses now licensed with for-hire tags? A. We do. Q. They are the busses described in your application, your petition? A. Yes, sir. Q. And in the event this permit is issued, would the Orlando Transit Company agree to keep such records as are prescribed by the Commission of the Comptroller and keep the mileage record required by the State of Florida and abide by rules and regulations of the Commission as to type and size and safety appliances and devices and regulations as to loads which might be reasonably prescribed by the Commission from time to time and within the limits prescribed by law as to such motor vehicles? A. Yes, sir. Q. You already have on file with this Commission insurance? A. Yes, sir. Q. That is in the amount of $225,-000.00? A. That is right. Q. That is for the purpose of protecting the public against injury caused by negligence of your operators or your company?. A. Yes, sir. Q. And you are willing to comply with such other reasonable requirements as the Commission might make relating to insurance or bonds? A. Yes, sir."

CROSS EXAMINATION

"Q. You spoke of two particular types of service, the first of which is charter service and the second operation through the travel bureau, do you propose if this is granted to deal with groups or individuals wanting to charter either of these busses for trips around the State of Florida? A. We don't propose a charter service. Q. You do propose to take movements of groups to points of interest in the State of Florida? A. That is correct. Q. That would be done by a contract made between the company and the individuals wishing to charter the bus? A. That is correct. Q. That would be for the use of the bus irrespective of the number of passengers? A. That is what we propose. Q. Does that mean, for example, that one of the busses would be available to the Orlando Rotary Club at a fixed rent per mile or per day to carry a group of Rotarians to some specific point, such as Daytona Beach and return to Orlando? A. Yes, sir. Q. The charge would be based on the use of the bus and the driver and not on the per capita of people transported? A. The charge would be on the use of the bus. Q. What do you mean by soliciting through

advertising? A. That we have busses for hire offered to the general public at a rate per hour. Q. Do you mean by personal contact in connection with chartering a bus for group movements or do you mean personal contact in securing a passenger? A. A group of passengers. Q. Do you mean to advertise on a specific date and hour one of your busses will move to Daytona Beach? A. No, sir. Q. You have been in the charter business for a number of years? A. No, sir. Q. Have you been renting busses for group movements for a number of years? A. Yes, but I do not call that charter service. Q. You did it with the authority of the Commission with respect to each of the groups? A. Yes, sir. Q. And with the consent of the Florida Grey Hound Lines? A. That is correct. Q. On your sworn testimony . . . you do not propose or will you solicit carriage on a per capita basis for any definite trip and will operate only in the carriage of groups under a contract covering the trip then an order from the Commission could be granted limiting you to group movement would be entirely satisfactory to you? A. Yes, sir."

"Q. You would transport athletic teams under this application? A That is right. Q. You would approach the athletic director of the Orlando High School, would you not? A. Yes. Q. You would make several trips to play football about the State? A. Yes. Q. You would do this for a fixed charge and under one contract? A. Yes. Q. What would your charges be? A. Fifty cents per mile plus waiting time if they stayed over a day. Q. You would apply to the Rotary Club or any other group and take parties from Orlando to any point in Florida? Yes. Q. You would advertise a share the expense trip from Orlando to Bok Tower and the Ringling Museum? A. We have not worked out the "share the expense" plan. We are not interested in that type of operation. We are interested in renting these busses to individual groups. If they wanted to form a party that would be alright. We are not interested in individuals or the sale of tickets. We lease or rent the bus for a fixed price to transport a group or groups for special trips only. We intend to use *only two* busses for this class of service. We would not pick up or discharge passengers going or on return, neither would we ob-

serve schedules, rates or routes, but would solicit business. The busses would be under the direction of the group renting them. We would agree in advance with the group on place of departure, the destination point and the time of return and the price for the use of the bus. We make or intend to make contact of carriage with a group or a unit basis and not with an individual. Each bus would be under a separate contract for the particular trip. We would rent the two busses for hire for a particular trip. Q. You know that under your common carriage certificate you could handle a charter group to Pensacola or to any point in Florida not served by the Florida Grey Hound out of Orlando. A. Yes. Q. You could handle charter groups to Ringling's Museum, Arcadia, Bradenton and all points west of Tallahassee where the point is not served by the Florida Grey Hound? A. I want a "for hire" service in that territory."

The order of dismissal complained of was based on grounds viz:

"1. The evidence produced by the appellant clearly shows that he is seeking charter service.

"2. That under the ruling of this Commission and the applicable law, charter service is an inherent right given to common carriers as an incident to the common carrier certificate.

"That in order to seek a common carrier certificate the applicant would necessarily have to come under Section 323.03 of the Act.

"4. Under Section 323.03 Sub. 3, the law provides that when any application has been filed and denied, that no further or similar application can be filed within a period of six months.

"5. In the instant case the order denying charter rights to the applicant was entered by this Commission on the 21st day of October, 1947, and within six months of this date and six months of the date of filing the application.

"6. Further, there is no evidence produced here under which the applicant could qualify for a for-hire application.

"7. Under Rule 6 it has been clearly demonstrated by this witness and the testimony involved that what he is seeking

is not in truth and in fact a for-hire certificate but is in truth and in fact a contract carrier which would fall under Section 323.03 of the Act."

Chapter 323, F.S.A. (Chapter 14,764, Acts of 1931, Laws of Florida, as amended) authorizes the use of the highways of the State of Florida by motor vehicles in the transportation of persons and property for hire. The law provides for the operation of three classes of motor vehicles over our highway system in the transportation of property and persons for hire and these classes are placed under the jurisdiction of the Florida Railroad Commission for regulation according to duly enacted and existing statutes. These three classes are (1) common carriers; (2) contract carriers; and (3) for hire carriers. See Riley v. Lawson, 10 Fla. 521, 143 So. 619. We have not been favored with a statutory definition of a common carrier.

Section 323.01 (8), F.S.A., defines a private contract carrier to mean any auto transportation company engaged in the transportation of persons or property over the public highways of this State who is not a common carrier but transports such persons, or property under contract for one or more persons, for compensation over such highways, where such carriage consists of continuous or recurring carriage under the same contract. See Smith v. Cahoon, 283 U.S. 553, 51 S. Ct. 582, 75 L. Ed. 1264.

The "for hire" or third class of carriers is defined by Section 320.01 (16), F.S.A., viz:

"(16) 'For hire' vehicles include all motor vehicles, or trailers drawn by motor vehicles, when used for transporting persons, commodities or materials for compensation; let or rented to another for a consideration; offered for rent or hired as a means of transportation for compensation; advertised in a newspaper or generally held out as being for rent or hire; used in connection with a travel bureau or when offered or used to provide transportation for persons solicited through personal contact or advertised on a 'share-expense' basis. When freight or passengers are transported in a motor vehicle outside of a municipal corporation of this state, for compensation or when freight is transported in a

motor vehicle not owned by the same person owning the said freight, so that there is identity of ownership between the said freight and motor vehicle, such transportation shall be deemed 'for hire.' The carrying of goods, wares, merchandise and other personal property in motor vehicles by corporations or associations for their stockholders, shareholders and members, cooperative or otherwise, shall be deemed transportation 'for hire';" . . .

See Section 323.01 (13), F.S.A.

Section 323.05, F.S.A., as amended by Chapter 22,842, Acts of 1945, Laws of Florida, provides that no auto transportation company shall operate any "for hire", motor vehicles on any public highway in this State in the transportation of persons or property for compensation without first having obtained from the Railroad Commission a permit, which permit shall issue as a matter of right and of course when the provisions of this Chapter and the laws of Florida touching such motor vehicle operations have been complied with by the applicant. The essential details necessary to conform to prior to obtaining the permit are recited and clearly set out under the above Section. The power to issue the permit is vested by law in the Railroad Commission. It cannot be issued under the above provision without a substantial compliance with the pertinent terms of the Act. We reaffirm our previous ruling on the point as enumerated in In re: Paul Grubb, 116 Fla. 387, 156 So. 482.

The pertinent allegations of the petition lodged with the Railroad Commission and the testimony of the witness Swope, adduced in support there, clearly established the inference or conclusion that the petitioner was not seeking or requesting of the respondent the issuance of a permit or a certificate of public convenience and necessity as a "private contract carrier" as defined in Section 323.01 (8), F.S.A., because there is no evidence in the record to show that the proposed service "consisted of continuous or recurring carriage under the same contract." The proposed service by the evidence was shown not to be regular, continuous or recurring under the same contract, but, on the contrary, was to be special and limited to groups as distinguished from the individual;

and a further consideration of the "private contract carrier" feature of this controversy is not required by the record.

The controlling question presented here is whether the petition and the evidence adduced in support thereof renders the proposed service of the petitioner a special charter service incidental to a holder of a certificate of public convenience and necessity as a common carrier as provided for in Section 323.14, F.S.A., or a "for hire" service as defined in Section 320.01 (16) supra. See Section 323.01 (13) supra. A cursory reading of these statutes suggest an overlapping of the two proposed services provided for, and the case at bar possibly is a borderline one. This incidental service of the common carrier is a limited one and the power to exercise it must plainly appear when construing Section 323.14 supra and other sections of the motor transportation act in pari materia with it.

Rules of statutory construction approved and recognized by this court are viz: If the courts can by any fair, strict, or liberal construction find a field of operation and can act without destroying the evident intent and meaning and preserving the force of both statutes applicable to the same subject, and can by construing both statutes together carry out manifest intention of the legislature, it is the duty of courts to do so. Arnold v. State, 147 Fla. 324, 2 So. (2nd) 874. It is the court's duty to find for conflicting statutory provisions a reasonable field of operation which may preserve force and effect of each statute and cause them to harmonize, if possible by any fair, strict, or liberal construction. Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So. (2nd) 234.

Section 323.14, F.S.A., authorized *any* common carrier to depart from the route described in such certificate if compelled to detour (1) on account of the closing of the road; or (2) for the purpose of transporting by charter or excursion a party of persons or property to a point or points not on such route, provided (a) such charter party originated on the route or at points served by such carrier, and may receive for such service compensation as may be agreed upon between the carrier and the party or parties so served; and provided

(b) that when both the point of origin and destination are served by another or other transportation companies by regular schedules, such charter or excursion parties may not be transported by a carrier not serving both of such points. (3) This section shall not apply to regular or recurring charter or sightseeing trips but to single or casual trips. We find nothing in the above Sections of Chapter 323 prohibiting the Railroad Commission from issuing a "for hire" permit as defined in the same Act. The quoted Section applies to *any* common carrier auto transportation company holding a certificate of convenience and public necessity issued to it by the Railroad Commission.

Section 323.05, F.S.A., requires the Railroad Commission to issue "as a matter of right and of course" permits to operate "for hire" vehicles on the public highways of Florida when the provisions of the Chapter and the laws of Florida touching such motor vehicle operations have been complied with by the applicant. The petitioner here simply requests a permit to operate on the highways of Florida only two of its fleet of forty busses, each of which is fully described in the application, and the testimony about same is not disputed. The Commission, like all others, is bound by the statutory definition of "for hire vehicles." Section 320.01 (16) F.S.A. provides: " 'For hire vehicles' include all motor vehicles . . . when used for transporting persons, commodities or materials for compensation; let or rented to another for a consideration; offered for rent or hire as a means of transportation for compensation, . . . " Thus it was the intention of the Legislature to provide the general public of Florida with a "for hire service" based on a contractual relationship to be agreed upon between the "for hire service" and the group or groups accepting and willing to pay for the service, it being optional with both the "for hire service" and the public whether an agreement for the renting or leasing of a "for hire" vehicle, and the consideration for its use, is agreed upon. The law makes it the *duty* of a common carrier, within the limits of its ability, to receive and carry *all* persons applying for transportation. The law makes it optional with a "for hire service" to carry those of the general public applying to

it for passage. 37 Am. Jur. 526. A "for hire service" has no continuous or recurring carriage under contract unless made so by the consent of the parties. The "for hire service" de- fined in Section 320.01 (16), F.S.A., and set out under Section 323.05, F.S.A. and Chapter 22,842, Acts of 1945, Laws of Florida, was considered by this Court in the case of Travis v. Fry, 139 Fla. 522, 190 So. 793. See Lawrence v. Goddard, 124 Fla. 250, 168 So. 13.

It is our conclusion that the respondent erred in granting the motion to dismiss and this ruling constitutes a material departure from the essential requirements of the law, and, accordingly the petition praying for a writ of certiorari is granted and the challenged order hereby quashed, with further directions to reinstate the petition for further proceedings in the cause not inconsistent with the views and judgment herein expressed.

THOMAS, C. J., TERRELL and SEBRING, JJ., concur.

PER CURIAM:

The order of the Railroad Commission dated February 23, 1948, in part, discloses the following:

"On February 4, 1948, this Commission held a public hearing on said application in Tallahassee, Florida, pursuant to Notice No. 1241, dated January 13, 1948, for the purpose of hearing all interested parties and determining whether or not the authority sought is in truth and in fact properly classified as 'for-hire' carriage, as distinguished from common carriers, contract carriage or otherwise.

"At said hearing the following appearances were entered:

"John G. Baker, 402 Metcalf Bldg, Orlando, Florida, for applicant.

"A. Y. Milam and Wayne K. Ramsey, 1200 Greenleaf Bldg., Jacksonville, Florida, for Florida Greyhound Lines, Inc., protestant.

"Clifford T. Inglis, 904 Barnett National Bank Bldg., Jacksonville, Florida, for Southeastern Greyhound Line, protestant.

"A. Pickens Cole, 716 First National Bank Bldg., Tampa, Florida, for Tamiami Trail Tours, Inc., Glades Motor Lines and Georgia-Florida Coaches, protestants.

"Perry A. Nichols, 226 Shoreland Bldg., Miami, Florida, for Coast City Coaches, protestant.

"Jeff D. White, Duval Street, Tallahassee, Florida, for Modern Coach Company, protestant."

The Orlando Transit Company, having been unsuccessful before the Florida Railroad and Public Utilities Commission, filed in this court on 7 April 1948 a petition for certiorari to review the order of the commission denying its application for a "For Hire" permit under Section 320.01 (16), Florida Statutes, 1941, and F.S.A. The matter came on to be heard before this court upon the record and the briefs of Orlando Transit Company, the petitioner, and Florida Railroad and Public Utilities Commission, the respondent.

In due course the matter was determined by an opinion written on behalf of this court by Chapman, J., filed 19 July 1948, and concurred in by THOMAS, C.J., and TERRELL and SEBRING, JJ. The time for filing having been extended, the petition for rehearing was filed 14 August 1948, and is now being circulated according to the practice of this court.

Long after the opinion of the court had been rendered, six petitions for "intervention," four of them by corporations which had appeared before the Railroad Commission and two of them by corporations which had not, were presented in this court. Parenthetically, three of these petitions were lodged after the petition for rehearing was filed by the respondent, and three of them before that date.

It is the sufficiency of these six petitions that we must now determine. It is immediately apparent that they fall into two important categories—those filled by corporations which were actually heard by the Florida Railroad and Public Utilities Commission and those filed by corporations which were not heard by the commission.

We shall dispose of them in inverse order.

This court has repeatedly held that no intervention will be allowed here. It is conceivable that an exception to this

rule might arise in a proceeding originally instituted in this court, because the one seeking to be heard would not have theretofore had that opportunity. We have held that "to the extent that it involves the review of the proceedings of an inferior court certiorari is an appellate proceeding, but, to the extent that the subject-matter of the proceeding brought before the appellate court will not be reinvestigated, tried, or determined on the merits as on appeal or writ of error, it is an original proceeding." Atlantic Coast Line R. Co. v. Florida Fine Fruit Co., 93 Fla. 161, 112 So. 66. But, strictly speaking, this is not such an original proceeding as would admit of "intervention" in this court as that term is generally used.

Aside from the question of delay on the part of those presenting the latter two petitions and their failure until after the filing of the opinion of this court on the merits to make any effort to be heard here as amici curiae, a matter which we shall later discuss, we do not think they could "intervene" here in a proceeding to review the order entered by the Florida Railroad and Public Utilities Commission.

We consider that the petitions of those who had been heard before the commission were not actually petitions to intervene, but simply requests to be heard here in the review of a proceeding in which they had participated.

We think that in all the circumstances they should have been heard, had their requests been seasonably made. We conclude that they were entirely too late when they waited until the case had been determined on its merits. Having actively participated in the proceedings below, they were put upon notice that a review of these proceedings might be sought in this court, and upon inquiry they could have determined when the petition for certiorari was presented here. We have no requirement that notice be given them, but the information was easily available. Upon close study we are convinced that this is not a harsh rule. By analogy when a litigant fails in a lower court he has only to file a notice of appeal in order to give the appellate court jurisdiction, and it is expressly provided that where the appeal is to the supreme

court no actual notice of appeal shall be necessary. (Section 59.10, Florida Statutes, 1941, and F.S.A.) We cannot see where any greater burden would be placed upon the present petitioners to make inquiry about an effort to review an order of the commission in a proceeding like the instant one than is placed upon a litigant to inform himself whether a notice of an appeal from a judgment of a lower court has been filed in the clerk's office. This thought seems to coincide with the one expressed by this court in Great American Insurance Company of New York v. Peters, 105 Fla. 380, 141 So. 322-327.

We reiterate that had the petitioners who appeared as protestants before the Railroad Commission made timely request to be heard here, they would have been granted that opportunity, but that their delay has precluded them from now being heard. This conclusion, however, is without prejudice to any request they may make in the event the petition for rehearing now being circulated amongst the members of the court is granted.

Petitions denied.

THOMAS, C. J. TERRELL, CHAPMAN, SEBRING and HOBSON, JJ., concur.

ADAMS and BARNS, JJ., not participating.