121 So.2d 779 (1960)
TROPICAL COACH LINE, INC., a Corporation, and the Greyhound Corporation, Southeastern Greyhound Lines Division, Petitioners,
v.
Jerry W. CARTER, Wilbur C. King and Edwin L. Mason, As Members of and Constituting the Florida Railroad and Public Utilities Commission, Respondents.
Supreme Court of Florida.
June 22, 1960.
Rehearing Denied August 3, 1960.
*780 D. Fred McMullen, Ausley, Ausley & McMullen, Tallahassee, and Lee M. Worley, Miami, for Tropical Coach Line, Inc., petitioner.
Wayne K. Ramsay, Jacksonville, for Greyhound Corp., Southeastern Greyhound Lines Division, petitioners.
Lewis W. Petteway and James L. Graham, Jr., Tallahassee, for respondents.
J. Kenneth Ballinger, Tallahassee, Richard B. Austin and Schwartz, Proctor, Bolinger & Austin, Jacksonville, for intervening respondent.
THORNAL, Justice.
By petition for certiorari the petitioners request review of an order of the respondent Commission construing Section 323.14, Florida Statutes, F.S.A., regarding "charter" carriage.
We must determine whether the holder of a certificate to transport passengers in common carriage to certain race tracks and frontons qualifies as an "intercity" carrier within the contemplation of Section 323.14, supra.
Wylly's Sportsman, Inc., a Florida corporation, holds certificate of public necessity and convenience No. L-50, issued by the respondent Commission. This certificate authorizes Wylly's to transport "patrons in motor buses in the city of Miami Beach, Florida, to all the dog and horse race tracks in Dade and Broward Counties and the jai alai fronton in Dade County, Florida, and return over the most direct available routes." By separate order Wylly's was authorized to pick up passengers at certain points in Miami Beach and elsewhere and to transport them to the various race tracks in the two counties, and to the jai alai fronton at Dania in Dade County. All of the approved destinations, except Tropical Park Horse Track, are located in various cities in Dade and Broward Counties. To reach these various tracks Wylly's buses must pass through and into these several cities. For example, to reach Tropical Park from Miami Beach a bus must pass through Miami and Coral Gables. To reach the jai alai fronton a bus must pass through several cities and ultimately enter the city of Dania in which the fronton is located. Certificate No. L-50 has been in effect for a number of years and, Wylly's, the present holder thereof, has for some time engaged in charter carriage as defined by Section 323.01. This was done under the assumption that the certificate authorized such service as an incident to the type of carriage delineated in the certificate itself. When complaints were raised by competitive carriers, Wylly's applied to the respondent Commission for clarification of its authority under its certificate. The Commission had the view that Wylly's is an intercity carrier within the contemplation of Section 323.14, Florida Statutes, F.S.A., and therefore, as a matter of law, was entitled to engage in charter carriage as an incident to its so-called intercity common carrier certificate. The petitioners who were protestants at the hearing before the Commission ask us now to review this order and ultimately direct its quashal.
It is the contention of the petitioners that the race tracks and the frontons are the points of destination to be served, rather than the cities in which, by coincidence, they happen to be located. They insist that to qualify as an intercity carrier it would be necessary that Wylly's serve the various cities as communities or political units as points of destination in and of themselves, rather than some business establishment located within the cities. They also claim that the order under review enlarged Wylly's authority without compliance with Section *781 323.03, Florida Statutes, F.S.A., regarding notice, hearing and a showing of public necessity and convenience.
The respondent Commission with an assist from Wylly's who has intervened, contends that the applicable statute by its own force endows this type of carrier with the incidental authority to render charter service as defined by Section 323.01. Such authority being an incident to the power granted by the certificate, they insist that it was unnecessary for Wylly's or the Commission to proceed under Section 323.03, supra.
Section 323.14(2), Florida Statutes, F.S.A., reads as follows:
"(2) Every certificate authorizing intercity common carriage of passengers, excepting, however, certificates authorizing sight-seeing service in common carriage, shall be deemed to carry with it as a part of the operating authority granted, the exclusive authority and privilege to engage in charter carriage between points served by the carrier in its authorized common carriage and between points of origin on such authorized routes and other points not thereon where another or other common carrier of passengers are not authorized to serve in common carriage both the point of origin and the point of destination." (Emphasis added.)
The point for us to settle is whether the intervenor Wylly's under its certificate L-50, is an "intercity" common carrier. If it is, the quoted statute ex proprio vigore grants to the holder of such a certificate the authority to engage in charter carriage. If this intervenor is not an intercity carrier then it would be bound to proceed in accord with the requirements of Section 323.03, Florida Statutes, F.S.A., in order to exercise such powers. Leonard Brothers Transfer & Storage Co. v. Boyd, Fla., 104 So.2d 489.
"Charter carriage" is defined by Section 323.01(10), Florida Statutes, F.S.A., and further by Section 323.05(4), Florida Statutes., F.S.A. It is generally understood to mean a type of transportation service for groups of people who have acquired the exclusive use of a motor bus under a single contract for a common purpose and usually for a negotiated rental.
Reverting to the requirements of Section 323.14, supra, we are confronted by the necessity of finding that Wylly's is a common carrier if the order under review is to be approved. We have no difficulty in so concluding. As a matter of fact, the petitioners by their reply brief concede that under certificate L-50, Wylly's is a common carrier. They do insist that by the language of the certificate, as well as by the Railroad and Public Utilities rule No. 5.2000, Wylly's is a "limited common carrier" in that they transport passengers only between fixed points of origin and the various race tracks and the fronton as established termini.
We have pointed out before, and we repeat for emphasis, that we find nowhere in the Auto Transportation Act (Chapter 323, Florida Statutes, F.S.A.,) any classification of carrier described, defined, or otherwise indicated under the title of "limited common carrier." The Auto Transportation Act appears to recognize three types of regulated motor vehicle carriers, to wit: (1) common carriers, (2) private contract carriers, and (3) carriers for hire. Orlando Transit Co. v. Florida Railroad and Public Utilities Commission, 160 Fla. 795, 37 So.2d 321. We have observed over the years numerous references to certificates to operate as a so-called "limited common carrier." We assume perhaps that the respondent Commission by this extra-statutory classification purports to indicate a type of common carriage that is subject to some sort of restriction. However, we must give prior regard to the legislative classifications. The result is that when the Legislature by statute refers to "common carriers" we must assume that it makes reference to all common carriers unless otherwise indicated. In this view the addition *782 of the word "limited" adds nothing whatever to the definition of the common carrier involved so far as the subject matter of this litigation is concerned.
The fact that Wylly's was certificated to serve primarily a particular class of patrons would not of itself destroy its common carrier characteristics. As a matter of fact, there is no restriction on the class of patrons which this carrier is authorized to transport. While its certificate was granted on the basis of a showing of convenience and necessity of race track and fronton patrons residing in the Miami Beach area, there is nothing in the certificate which restricts transportation to that class of customer. In other words, any citizen of Miami Beach wishing to go to Dania could board a Wylly's bus at an authorized loading area and leave the bus at the fronton at Dania. The point is that even though designed primarily to serve patrons of race tracks the carrier, nevertheless, is not precluded from serving patrons generally within the limits of its certificate and between its termini. Moreover, the fact that it must serve all race track customers without discrimination would clothe Wylly's with the vestitures of a common carrier, in view of the fact that this group itself would involve a substantial segment of the public. 37 Am.Jur. Motor Transportation, Section 3, page 526; State v. Ferry Line Auto Bus Co., 93 Wash. 614, 161 P. 467; Georgia Public Service Commission v. Saye & Davis Transfer Co., 170 Ga. 873, 154 S.E. 439; Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984, Ann.Cas. 1916D, 765. We are not here confronted with a carrier operating pursuant to a private contract with a particular business establishment by which the carriage is limited to hauling especially selected customers scheduled for transportation by the carrier's employer. See State of Utah ex rel. Public Utilities Commission v. Nelson, 65 Utah 457, 238 P. 237, 42 A.L.R. 849.
The principal issue in contention between the petitioners and respondent evolves around the word "intercity" as it is used in Section 323.14(2), supra. It will be recalled that the Legislature has provided that the holder of a certificate authorizing "intercity common carriage" shall be deemed to carry with it as a part of the operating authority the exclusive privilege to engage in charter service within the limitations provided in the statute. The petitioners assert that by the use of the word "intercity" the Legislature did not intend to endow "limited common carriers" of the type of Wylly's with the privilege of rendering charter service as an automatic incident to its certificate. We have seen that the addition of the word "limited" with reference to the subject matter of this litigation neither adds to nor detracts from the common carrier nature of the Wylly's certificate.
In making a judicial effort to ascertain the legislative intent implicit in a statute, the courts are bound by the plain and definite language of the statute and are not authorized to engage in semantic niceties or speculations. If the language of the statute is clear and unequivocal, then the legislative intent must be derived from the words used without involving incidental rules of construction or engaging in speculation as to what the judges might think that the legislators intended or should have intended. Fine v. Moran, 74 Fla. 417, 77 So. 533; Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So.2d 356; State ex rel. Bie v. Swope et al., 159 Fla. 18, 30 So.2d 748.
Although there have been few judicial efforts to define the word "intercity", we think that the structure of the word itself makes it clear without speculating as to what we think the Legislature might have intended.
Reference to Webster's New International Dictionary, 2nd Edition, leads us to the prefix "inter." Among other definitions "inter" is defined to mean "carried on between." The footnotes under this prefix in the same dictionary suggest that *783 the adjective "intercity" simply means "carried on between cities." We have the feeling that the statutory definition of the word "intercity" revealed in Southwestern Motor Carriers Corp. v. State, 190 Okla. 491, 125 P.2d 760, 762, rather adequately reflects the commonly accepted understanding of the word. The Oklahoma statute there defined the term "intercity" as "describing transportation of either passengers or property, when such transportation is from one incorporated city or town to or through another incorporated city or town or through two or more incorporated cities or towns regardless of the point of origin or destination." We do not cite the Oklahoma decision as authority in support of the order under review. We do, however, refer to the definition from which we have quoted as being an acceptable statement of the meaning of the expression "intercity" as employed in common parlance. The word most often used to describe this type of transportation is "inter-urban." American Business Dictionary compiled by Harold Lazarus tells us that this word "generally means the uniting of or belonging to two cities. Something that unites two closely related cities such as car line, motor buses, tubes or ferryboats."
It appears to be the contention of the petitioners that in order to enjoy the privileges of the intercity category, a carrier must render the services of what they call "over the road transportation companies" such as the petitioner Greyhound. By this they apparently contend that Greyhound, for example, moves passengers from city to city, whereas Wylly's moves passengers from boarding points to fixed destinations and return. They admit that the terminal points are within cities and admit that it is necessary to pass through cites in order to transport the passengers. Unfortunately for the petitioners the Legislature has made no such distinction in the Auto Transportation Act. It seems clear to us that the carrier Wylly's is a common carrier and it is one which moves between, through and into cities. It is, therefore, clearly an intercity common carrier and is entitled to the privileges of such prescribed by the Legislature. The respondent Commission is not authorized to disregard this legislative directive; neither are we. If any change in the law is to come about or if any limitation such as advocated by the petitioners is to be impressed on certificates of the class held by intervenor Wylly's, such changes or limitations will have to be accomplished by a revision of the governing statute.
Concluding as we do that the order submitted for review comports with the essential requirements of the law, the prayer of the petition for a writ of certiorari must be and it is hereby denied, and the petition is dismissed.
It is so ordered.
THOMAS, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.