TERRELL, Acting Chief Justice.
The Greyhound Corporation, Southeastern Greyhound Lines Division, hereinafter referred to as Greyhound, filed complaint with Flordia Railroad and Public Utilities Commission, hereinafter referred to as Commission, to which Service Coach Lines, Inc., hereinafter referred to as *346 Service, filed its answer. The complaint alleged that Service performed a charter service from Jacksonville to Silver Springs in violation of § 323.14, Florida Statutes 1957, F.S.A. The complaint charged that at the time said charter service was performed, Service did not have certificate of authority from the Commission to serve both Jacksonville and Silver Springs, but that Greyhound did have that right, consequently Service did not have authority to perform said charter service.
In its answer Service admitted the facts so alleged but contended that the charter service was not a violation of § 323.14, Florida Statutes, F.S.A. Argument was had on the issues so made by the complaint and the answer, at the conclusion of which the Commission entered Order No. 4811, finding Service not guilty and dismissed Greyhound’s complaint. Petition for reconsideration was filed by Greyhound to which Service proffered a reply and on consideration of which the Commission promulgated Order No. 4840 dismissing Greyhound’s petition for reconsideration. We are confronted by an appeal by cer-tiorari from the latter order.
The point for determination is: Can a regular route common carrier of passengers perform a charter service where both the point of origin and the point of destination is not served by such carrier, but such points are on the route served by another carrier?
There is no dispute about the facts as related. Both Greyhound and Service are holders of certificates of public convenience and necessity from the Commission authorizing them to transport baggage and passengers over designated routes. Service is authorized to carry passengers, baggage of passengers and light express as a common carrier between the Georgia-Florida line and Jacksonville over U. S. Highway No. 1, and in so doing, serves Hilliard, Callahan, Dinsmore and all intermediate points. Greyhound holds the same type of certificate but it is authorized to conduct services over a greater territory than Service, that is to say, from Jacksonville to Silver Springs. Since both operate between incorporated municipalities, the Commission properly considered them to be intercity common carriers.
At the time and place stated above, the complainant, under its Certificate No. 26, was authorized to serve both the point of origin and destination, but Service was authorized under its Certificate No. 482 to serve only the point of origin. It further points out that Greyhound is authorized to serve both Jacksonville and Silver Springs and concluded that by virtue of § 323.14, Florida Statutes, F.S.A., Greyhound, therefore, has the exclusive right to perform charter services between said points but that Service does not have such right. The complaint prayed that the Commission enter an order directing Service to cease and desist from engaging in such charter service in the State of Florida where it is not authorized to serve both the point of origin and the point of destination of the proposed charter service when Greyhound is authorized to service both of said points.
In its answer Service admits the factual allegations of the complaint but contends that it had authority to perform the charter service in question under the same statute, § 323.14, Florida Statutes, F.S.A., despite the fact that it was not authorized to serve Silver Springs. The question presented turns on the interpretation of § 323.14, Florida Statutes, as amended by Chapter 25418, Acts of 1949.
Section 323.14, Florida Statutes, was originally § 14 of Chapter 14764, Acts of 1931, better known as the Auto Transportation Act, and is as follows:
“Any common carrier auto transportation company holding a certificate may depart from the route described in such certificate if compelled to detour on account of the closing of roads or for the purpose of transporting by charter or excursion party of persons or property to a point or points not on such route, providing such charter *347 party originated on the route or at points served by such carrier, and may receive for such service compensation as may he agreed upon between the carrier and the party or parties so served; provided that when both the point of origin and destination are served by another or other auto transportation companies by regular schedule, such chartered or excursion parties may not be transported by a carrier not serving both of said points. This section shall not apply to regularly recurring chartered or sightseeing trips but only to single or casual trips.”
As amended by Chapter 25418, Acts of 1949, Florida Statutes, § 323.14, F.S.A., Acts of 1931, reads as follows:
“(1) Any common carrier auto transportation company holding a certificate may depart from the route described in such certificate if compelled to detour on account of the closing of roads, or may depart from its authorized routes of carriage for the purpose of transporting in ‘charter’ carriage a party of passengers to a point or points not on such route, providing such charter party originated on the route of or at points served by such carrier.
“(2) Every certificate authorizing intercity common carriage of passengers, excepting, however, certificates authorizing sightseeing service in common carriage, shall be deemed to carry with it as a part of the operating authority granted, the exclusive authority and privilege to engage in charter carriage between points served by the carrier in its authorized common carriage and between points of origin on such authorized routes and other points not thereon where another or other common carrier of passengers are not authorized to serve in common carriage both the point of origin and the point of destination.
‘‘(3) Common carriers of passengers, under reasonable rules and regulations of the Commission, may arrange for and receive for charter services such compensation as may be agreed upon between the carrier and the parties or parties to be served, and such compensation may include services and expenses in addition to transportation charges.”
The Commission admits that prior to the 1949 Act, Service could not have performed the charter service in question. It contends, however, that there is a direct conflict between subsections (1) and (2) of § 323.14, Florida Statutes, F.S.A.; that subsection (1) defines the legislative intent and provides that a certificate holder common carrier auto transportation company like Service has authority to transport charter parties from points on its authorized lines to any other point in the state. It further contends that failure to amend subsection (2) of the act to remove the conflict must have been an oversight.
Examination of subsections (1) and (2), we do not think warrants the Commission’s interpretation. Subsection (1) grants any common carrier auto transportation company certain charter powers but such powers are limited by the provisions of subsection (2). It is our view that when a common carrier seeks to perform charter service originating at a point which it is authorized to serve by virtue of its certificate to a point not on such authorized route, it may do so only if there is no other common carrier whose certificate authorizes it to serve the point of origin and the destination of the proposed charter trip.
In Tropical Coach Line, Inc. v. Carter, Fla., 121 So.2d 779, 782, opinion by Mr. Justice Thornal, we recognized the limitations in subsection (2) of § 323.14, Florida Statutes, as follows:
“The principal issue in contention between the petitioners and respondent evolves around the word ‘intercity’ as *348 it is used in Section 323.14(2), supra. It will be recalled that the Legislature has provided that the holder of a certificate authorizing ‘intercity common carriage’ shall be deemed to carry with it as a part of the operating authority the exclusive privilege to engage in charter service within the limitations provided in the statute.”
We think the said act is perfectly clear as written and being so, the court, as well as the Commission, is bound by its terms. The interpretation given it by the Commission in effect destroys the meaning of subsection (2) and is not well grounded, especially in this case where its terms are clear and may be given efficacy. If the result of our holding is to foster or create a monopoly, it is for the legislature and not this court or the Commission to change the statute. If there is a field for the operation of both statutes, the court and the Commission must so find. The Commission overlooked this well settled canon of interpretation.
It follows that the order of the Commission being contrary to the essential requirements of law must be, and is hereby, quashed with directions to enter an order in accordance with the views herein expressed.
It is so ordered.
ROBERTS and O’CONNELL, JJ., WIG-GINTON, District Judge and KEHOE, Circuit Judge, concur.