JAMES F. BOYER v. JIM BLACK, as Sheriff of Orange County, Florida.

18 So. (2nd) 886                                      June Term, 1944
July 18, 1944                                             En Banc

G. P. *Garrett* and *Edward K. Goethe,* for appellant.

J. *Tom Watson,* Attorney General and *Howard S. Bailey,* Assistant Attorney General, for appellee.

SEBRING, J.:

James F. Boyer was arrested upon an information in three counts charging him with violation of the Florida Uniform Sale Securities Law. The first count of the information is not material here. The second count charged petitioner with unlawfully engaging in the business of a dealer in securities issued by another person, without such securities first having been registered in the office of Florida Securities Commission. The third count charged him with unlawfully engaging in the business of 'a dealer in securities by selling securities issued by another person, without having first become registered as a dealer of securities in the office of Florida Securities Commission.

Boyer obtained a writ of habeas corpus from the Circuit Court of Orange County to test the legality of his restraint. On hearing the trial court discharged petitioner from custody under the first count and remanded him for trial on the second and third counts of the information. This appeal is from the judgment or order of remand.

The subject-matter of the controversy appears on its face to be an assignment of gas and oil lease in and to forty acres of specifically described land in Presidio County, Texas, sold by the appellant, Boyer, to one A. B. Fuller of Orange County, Florida. Negotiations for the sale were opened on May 11, 1943. The transaction became completely consummated sometime in June, 1943, by Boyer delivering the assignment of lease to the purchaser after it had been duly recorded in the public records of Presidio County, Texas, and receiving from Fuller the agreed purchase price. No representations were made by Boyer during the negotiations between the parties that he or anyone else was drilling for gas or oil on the land, or land close by, or expected to or would undertake to drill thereon in the future. No representations were made to Fuller that by buying the lease he would thereby acquire interests in tracts of other purchasers, or in unsold tracts of the assignor, or in any well or production therefrom. It does not appear that the seller, or anyone under him, was to retain or exercise any management or control over the propery or to guide it into profit-making

channels. When Fuller purchased the lease he understood clearly that what he was buying was the gas and oil lease in question and whatever property interest in the land the lease carried with it—nothing more. The instrument was not an obligation for the payment of money. No profit-sharing or participation agreement or scheme was involved in the transaction. No undertaking was assumed by the seller to develop the property, explore for gas or oil, or resell the lease for profit.

Prior to 1943 gas and oil leases in out-of-state lands were not expressly made subject to regulation in Florida. The Legislature of 1943 attempted to include them by amendment to the Uniform Sale of Securities Law of this State. See Chapter 21709, Laws of Florida, 1943. Appellant questions whether the title to the 1943 amendatory act is sufficient to bring such transaction as is here involved within the scope of the regulatory measure.

Section 517.02 (1) Florida Statutes 1941 (Sec. 1, Chapter 14899, 1931; Sec. 1, Chapter 17253, 1935; Sec. 1, Chapter 19190, 1939) defines securities subject to registration and regulation in this State to include:

". . . any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, whiskey warehouse receipt, or other commodity warehouse receipt, or right to subscribe to any of the foregoing, certificates of interest in a profit-sharing agreement, certificate of interest in an oil, gas, petroleum, mineral or mining title or lease, or the right to participate therein, collateral trust certificate, pre-organization certificate, pre-organization subscription, or any transferable share, investment contract, or beneficial interest in title to property, profits or earnings, interest in or under a profit-sharing or participating agreement or scheme, or any other instrument commonly known as a security; including an interim or temporary bond debenture, note, certificate, or recipt for a security or for subscription to a security."

Chapter 21709, Laws of Florida, 1943 attempts to extend the scope of the legislative definition of "securities" by including within the body of the act "oil, gas and petroleum

leases on lands situated outside this State, offered for sale to the public by a dealer or salesman in this State." The amendatory act is entitled "An Act to Amend Section 1 of Chapter 14899, Acts 1931 as amended by Section 1 Chapter 17253, Acts 1935 as amended by Section 1 of Chapter 19190, Acts 1939; Section 5 of Chapter 14899 Acts 1931 as Amended by Section 4 of Chapter 17253, Acts 1935 as Amended by Section 2 of Chapter 19190 Acts 1939; Section 11 of Chapter 14899, Acts 1931 as Amended by Section 6 of Chapter 17253 Acts 1935 as Amended by Section 3 Chapter 20960 Acts 1941, Being 'An Act Regulating the Sale of Securities and to Make Uniform the Law Relating Thereto; and to Repeal Statutes Which Are Inconsistent Herewith.' "

Appellant contends that a lease of gas and oil rights in Texas lands being an instrument conveying an interest in land with none of the attributes or characteristics of a "security," as the word is generally and commonly understood, the inclusion of such instrument in the legislative definition of "securities" by Chapter 21709, supra, without specific reference being made or notice given in the title that a special definition of such subject-matter is contemplated, constitutes the introduction in the body of the Act of matter not expressed in the title or properly connected therewith. We think that the point is well taken.

Section 16 of Article III Constitution of Florida requires that each law enacted shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title. The constitutional provision is mandatory. The title need not be an index to the body of the act, nor need it embrace every detail of the subject-matter. All that is required is that the propositions embraced in the act shall be fairly and naturally germane to that ɪ ʰted in the title. But if the title is deceptive or misleading, ( ᴉ by recourse thereto a reader of normal intelligence is ɪ ɔt rᴇ ᶤsonably apprised of the contents of the act, the title ᶤ defᴇᶜᵗ ive and the act is in violation of the constitutional ᴊ ᵊquiremᴇ ᵗt insofar as such subject-matter is improperly ᶤncluded.

By the subject expressed in the title of Chapter 21709,.

supra, notice is given that "securities" are to be dealt with and regulated in the body of the Act. From the citation of authorities presented in briefs it appears that in the State of Texas, at least, the sale and assignment of a gas and oil lease such as we have here is equivalent to the sale and assignment of a leasehold interest in land in the specific tract described. Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, et al., 133 F. 2d 241; Securities and Exchange Commission v. C. M. Joiner Leasing Corporation, et al., 64 S. Ct. 120; Dunn, et al., v. Tennant, (Tex. Civ. App.) 82 S.W. (2nd) 728; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 154 S.W. 290, 29 A.L.R. 566; Sibley v. Pickens (Tex. Civ. App.) 273 S.W. 897; State v. Hatcher, 115 Tex. 332, 281 S.W. 192; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W. (2nd) 27; Sheffield v. Hogg, 124 Tex. 290, 77 S.W. (2nd) 1021. It is not such an instrument as is commonly understood by the public or by the lexicographers to be a "security," within the generally accepted definition of such word; nor is it within the legislative definition given such word by the Uniform Sale of Securities Law prior to 1943.

There would seem to be little question but that, subject to certain limitations, the legal instruments by which gas and oil rights are transferred from one person to another may be lawfully brought into the sphere of operation of the Uniform Sale of Securities Law and regulated as securities. Perhaps they ought to be. Although indispensable instruments of honest and legitimate oil exploration and production they are sometimes employed by the dishonest and unscrupulous as vehicles of speculation and fraud. But before such regulation can be validly effectuated, the title to the Act bringing such instruments within the scope of such legislation must be sufficient to put the public on notice or lead to reasonable inquiry that such is the intent and purpose of the amendatory provision. Nowhere in the title to Chapter 21709, supra is it even remotely suggested that in further expanding the securities law of this State the Legislature intended to bring transactions like the one shown here within the scope of the legislative definition of the word "security." The Act,

therefore, is in violation of Section 16 of Article III of the Constitution of Florida, insofar as this transaction is concerned.

The judgment or order appealed from is reversed.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, THOMAS and ADAMS, JJ., concur.

CHAPMAN, J., dissents.