**PORT OF PALM BEACH DISTRICT v.
BOARD OF COUNTY COMMISSIONERS.**

Circuit Court, Palm Beach County.

January 11, 1956.

Charles B. Fulton, West Palm Beach, for plaintiffs.

Harry A. Johnston and Henry F. Lilienthal, both of West Palm Beach, for defendants.

W. Terry Gibson, West Palm Beach, amicus curiae.

JOSEPH S. WHITE, Circuit Judge.

This cause was heard after due notice on defendants' motion to dismiss filed November 18, 1955, and argument of counsel.

The court is called upon to decide the constitutionality of chapters 31126 and 31129, Special Acts of 1955, relating to the Port of Palm Beach District, a special taxing district in Palm Beach County. Attached to the bill of complaint is a copy of an opinion of the Attorney General of Florida expressing doubt regarding the validity of the acts and suggesting that a test be made to settle the matter. This action for declaratory decree has resulted. No dispute of fact is involved. The controversy relates entirely to questions of law.

Hereafter chapter 31126 will be referred to as Act "A" and chapter 31129 will be referred to as Act "B".

These acts are "special" or "local" acts and are governed in their passage through the legislature by section 21 of article III of the Florida constitution. The constitution requires that in the case of such legislation, notice of intention to apply for the passage

thereof be published thirty days before its introduction or, in lieu of such notice, that provision be made "that the same shall not become operative or effective until ratified or approved at a referendum election * * *". Thus, unless previous notice is given of the intention to apply for its passage, or, unless it makes provision for such a referendum, a "special" or "local" act is invalid notwithstanding that it may have been otherwise duly enacted by the legislature.

A notice of intention to secure passage of the acts now in question was not published. Therefore, the acts may not stand unless provision for referendum in accordance with the constitution is to be found therein.

Act "A" provides that the board of commissioners of the district shall be abolished "on the First Tuesday after the First Monday of January, 1957," and that thereafter the governing authority of the district shall be vested in the board of county commissioners of Palm Beach County. Section 4 provides—

Section 4. A referendum election shall be called and held in the territory embraced in said Port of Palm Beach District. Such election shall be called by the Board of County Commissioners and held at the time of holding the first primary or general election hereafter held in Palm Beach County. Only the qualified voters residing in said Port of Palm Beach District are eligible to vote in such referendum election.

Three questions submitted at such election shall be as follows and the ballot shall be arranged so that the voter may vote in favor of one, but only one, of the said three questions, to-wit:

1. "Shall the Board of Commissioners of the Port of Palm Beach District be abolished on the First Tuesday after the First Monday of January 1957 and the functions and duties of such Board be transferred to the Board of County Commissioners of Palm Beach County, Florida?"

2. "Shall the Port of Palm Beach District remain as it now is?"

3. "Shall the membership of the Board of Commissioners of the Port of Palm Beach District be increased from 3 to 5 and the Sub-Districts of the Port of Palm Beach District increased from 2 to 4, 2 being in the Glades area?"

If question number one above shall receive a majority of the votes cast on the above three questions, this act shall take effect immediately and be in full force and effect. If no one of the above three questions receives a majority of the votes cast on said questions, the two questions receiving the highest number of votes, shall be re-submitted to the voters in the next primary or general election, and if question number one receives a majority of votes cast on the two questions re-submitted, this

act shall take effect immediately and be in full force and effect. Unless question one receives a majority of votes cast as aforesaid, this act shall not become effective.

Act "B" provides that the board of commissioners of the district shall be increased from three members as originally established by chapter 7081, Acts of 1915, to five members, and the sub-districts increased from two to four, "2 being in the Glades area." Section 5 provides—

Section 5. A referendum election shall be called and held in the territory embraced in said Port of Palm Beach District. Such election shall be called by the Board of County Commissioners and held at the time of holding the first primary or general election hereafter held in Palm Beach County. Only the qualified voters residing in said Port of Palm Beach District are eligible to vote in said referendum election.

Three questions submitted at such election shall be as follows and the ballot shall be arranged so that the voter may vote in favor of one, but only one, of the said three questions, to-wit:

1. "Shall the Board of Commissioners of the Port of Palm Beach District be abolished on the First Tuesday after the First Monday of January 1957 and the functions and duties of such Board be transferred to the Board of County Commissioners of Palm Beach County, Florida?"

2. "Shall the Port of Palm Beach District remain as it now is?"

3. "Shall the membership of the Board of Commissioners of the Port of Palm Beach District be increased from 3 to 5 and the Sub-Districts of the Port of Palm Beach District increased from 2 to 4, 2 being in the Glades area?"

If question number three above shall receive a majority of the votes cast on the above three questions, this act shall take effect immediately and be in full force and effect. If no one of the above three questions receives a majority of the votes cast on said questions, the two questions receiving the highest number of votes, shall be re-submitted to the voters in the next primary or general election, and if question number three receives a majority of votes cast on the two questions re-submitted, this act shall take effect immediately and be in full force and effect. Unless question three receives a majority of votes cast as aforesaid, this act shall not become effective.[1]

As thus composed, question 1 is intended to encompass the provisions of Act "A" and question 3 is intended to encompass the provisions of Act "B".

---

[1]No provision is made in either act for the situation which might arise if all three questions should receive the same number of votes or if one question should receive more than the other two, the latter being then tied, but none having a majority.

It will be observed that Act "A" deals entirely with the subject of abolishing the board of commissioners of the district and transferring its duties to the board of county commissioners of Palm Beach County. Instead of making it possible for a voter to cast a vote on the sole question whether or not the act is to "become operative or effective," as provided by the constitution, the act requires that the voter make an affirmative choice of one question from a series of three, the last of which relates to a subject not embraced within the act, itself, or expressed in its title.

Likewise, it will be observed that Act "B" deals entirely with the subject of increasing the membership of the board of commissioners of the district from three to five and the sub-districts from two to four. Instead of making it possible for a voter to cast a vote on the sole question whether or not the act is to "become operative or effective," as provided by the constitution, the act requires that the voter make an affirmative choice of one question from a series of three, the first of which relates to a subject not embraced within the act, itself, or expressed in its title.

In accordance with the provisions of each act quoted above, if none of the three questions receives a majority vote at the first election and questions 1 and 3 are then highest, only questions 1 and 3 may be submitted to the voters at the second election. At the second election each voter is required to vote "for" one or the other question. He may not vote to make both acts "operative or effective." Neither may he vote to reject them. He is thus *compelled* to accept either Act "A" or Act "B."[2]

If neither question 1 or 3 receives a majority vote at the first election it follows that a majority of those taking part in the election were not in favor of either Act "A" or "B". If in that case questions 1 and 3 have received the highest vote and are then submitted at a second election the only way that the majority of the voters can show their objection to one act is to cast an affirmative vote for the other. Thus the only way a voter can express his opposition to question 1 is to vote for question 3 whether he wants Act "B" or not, and the only way a voter can express his opposition to question 3 is to vote for question 1 whether he wants Act "A" or not. By such a procedure at least one of the acts in question is *forced* upon the voter notwithstanding that notice of intention

[2]Separate elections or separate ballots upon each act is prohibited by virtue of the provision found in each act "that the ballot shall be arranged so that the voter may vote *in favor of* one, *but only one,* of the said questions." (Italics added.)

to apply for passage thereof has not been published as required by the constitution.[3] It is the view of the court that this is not such a referendum as is intended by section 21, article III of the Florida constitution.

To approve such a plan would establish an undesirable precedent because if two separate acts may thus be submitted to referendum upon a single ballot, there would seem to be no reason why a much larger number might not similarly be submitted at one and the same time. Obviously, such a situation would lead to an unwholesome result.

Plaintiffs make a further objection to the acts in question based on section 16 of article III of the Florida constitution. There it is required that each law enacted in the legislature "shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title." Plaintiffs argue that each of the acts in question violates the constitution by not having its subject-matter expressed within its title. Defendants, on the other hand, insist that the two acts should be accepted as if they were a single enactment and construed together and that they will thus meet the requirements of the constitution. See Orlando Transit Co. v. Florida Railroad Commission, 160 Fla. 795, 37 So. 2d 321.

The predominant purpose for the requirements of section 16 of article III is to prevent deception and to insure sufficient information in the title of an act to put interested persons on notice or inquiry of its contents. If the title is deceptive or misleading, or by recourse thereto a reader of normal intelligence is not reasonably apprised of the contents of the act, the constitutional provision is violated. Another reason for the requirement is to prevent "hodge-podge" in legislation. See Lee v. Bigby Electric Co., 136 Fla. 305, 186 So. 505; Commercial Fishermen's Ass'n v. Christensen, 151 Fla. 474, 10 So. 2d 322; Boyer v. Black, 154 Fla. 723, 18 So. 2d 886, 153 A.L.R. 869; and State ex rel Parrish v. Lee, 156 Fla. 578, 23 So. 2d 731.

---

[3]To illustrate: Suppose 100 voters take part in the first election. 40 vote for question 1, 25 vote for question 2 and 35 vote for question 3. No question has received a majority, but 65 voters have shown their opposition to question 3 and 60 have shown their opposition to question 1. Now, at the second election the voter has but one choice, namely, to vote *"for"* Act "A" or Act "B." The 65 voters who opposed question 3 at the first election now are *compelled* to accept Act "A" in order to defeat Act "B," and the 60 voters who opposed question 1 are *compelled* to accept Act "B" in order to defeat Act "A."

The title of Act "A" makes no reference to the subject-matter contained in question 3. Neither does it indicate that the voter is to be required to participate in the two elections as just described. Likewise, the title of Act "B" makes no reference to the subject matter contained in question 1. Neither does it indicate that the voter is to be required to participate in the two elections at which a series of questions will be submitted.

The court has found no case such as this where the practice of expressing the subject matter of one act in the title of another has been approved. The constitutional mandate in question is mandatory and is to be strictly construed with reference to the mischiefs intended to be arrested. See Town of Monticello v. Finlayson, 156 Fla. 568, 23 So. 2d 843. When such a procedure as has been suggested by defendants is considered in the light of the foregoing principles of law, one readily sees that it cannot be approved. The title of Act "A" suggests to the reader thereof that the act, itself, deals solely with the subject of abolishing the board of commissioners of the district and transferring its duties to the board of county commissioners of Palm Beach County and that he will be given an opportunity to vote at a referendum election on the sole question whether or not the act is to "become operative or effective" as provided by section 21 of article III. No suggestion is made to the reader that he will be required to make an affirmative choice of one question from a series of three, the last of which relates to a subject not embraced within the act itself or expressed in its title. Likewise, the title of Act "B" suggests to the reader thereof that the act itself deals solely with the subject of increasing the membership of the board of commissioners of the district from three to five and the sub-districts from two to four and that he will be given an opportunity to vote at a referendum election on the sole question whether or not the act is to "become operative or effective" as provided by section 21 of article III. No suggestion is made to the reader that he will be required to make an affirmative choice of one question from a series of three, the first of which relates to a subject not embraced within the act itself or expressed in its title. Thus the title of each act is deceptive and misleading. In addition, a case of "hodge-podge" legislation is presented.

There is yet another irregularity in these acts. Act "A" provides that the board of commissioners of the district as established by chapter 7081, Acts of 1915, "shall be abolished on the first Tuesday after the first Monday in January of the year 1957***." Act "B" provides that at "the general election in the year of 1956 and at each general election every four years thereafter the suc-

cessors of the commissioners of the Board of Commissioners of the Port of Palm Beach shall be elected ***." Yet, each of the acts in question provides that the board of county commissioners may call the first referendum election at the general election to be held in 1956 and the second referendum election at the general election to be held in 1958. Thus, if the board of county commissioners chooses to call the first election at the time of holding the general election in 1956 and a second election is required, the board of county commissioners in accordance with the provisions of the acts, may postpone the second election until the general election to be held in 1958—a time long subsequent to the periods thus fixed by the legislature for the happening of the events mentioned.

Obviously such a condition makes it possible for an administrative board to grant or withhold the result of a legislative enactment by postponing such a referendum to a date subsequent to the time for the happening of events as prescribed by the legislature. This likewise is contrary to constitutional principles.

The court is not unmindful of its duty and obligation to sustain any effort of the legislature to establish the right of the people to referendum and therefore has reluctantly arrived at this decision.

Thereupon, it is ordered and decreed that the motion to dismiss is denied; that there is no genuine issue of fact and nothing to be answered in the bill of complaint; that such legislation is unconstitutional and invalid and the board of county commissioners of Palm Beach County is enjoined from holding such elections. Court costs are assessed against the plaintiffs.