WIGGINTON, Judge.
Petitioner seeks review by certiorari of an administrative order entered by the respondent, Comptroller of the State of Florida. The questioned order affirmed the report and recommendation of the hearing examiner which found that petitioner is not exempt from, but on the contrary is liable for the payment of, sales taxes assessed against it on the purchase by it of tools, automotive parts, tire rentals and shop equipment in connection with its motor truck transportation business. Petitioner contends that it is exempt from the payment of the disputed tax under the exemption provisions of the statute, and that the Comptroller erred in disallowing such exemption.
Petitioner is a Florida corporation engaged primarily in the transportation of exempt commodities in interstate commerce. Its principal place of business is Fort My *177 ers, Florida, but it also maintains an office for the transaction of business in Bergen, New Jersey. Petitioner transports commodities exempt from regulation by the Interstate Commerce Commission to and from various points in some twenty states over regular and irregular routes. Petitioner is the holder of a letter from the Interstate Commerce Commission indicating its exemption from- Commission regulations, but it is not licensed by said Commission as a common carrier, and files with the Commission no rates or tariffs.
Approximately 60% of the commodities transported by petitioner’s vehicles are those classified as exempt commodities under the Interstate Commerce Act. These commodities are transported northbound from Florida to various other states under individual contracts with shippers, the rates charged being influenced by the cost of operation and what the traffic will bear in each individual case. On the southbound return trips of petitioner’s vehicles other commodities are transported on spot lease or trip lease arrangements, whereby petitioner’s vehicles are leased for specific trips to other trucking companies engaged as common carriers, for use by such lessees in the transportation of goods and commodities for hire. The lessee trucking companies hold certificates issued by the Interstate Commerce Commission and are subject to its regulations. While under lease to other trucking companies petitioner’s drivers and equipment are under the lessee’s jurisdiction and its vehicles operate under the common carrier certificates issued to such companies as certified interstate common carriers. Approximately 40% of the commodities transported by petitioner’s vehicles and equipment is under such lease arrangements with other carriers. The conclusion is inescapable that this phase of petitioner’s business is incidental to its primary corporate purpose and function and merely minimizes the economic waste which would otherwise occur if petitioner’s vehicles were returned to Florida empty or with only a partial payload.
Petitioner holds certificates or permits from nineteen states of this nation, entitling it to operate its motor vehicles and equipment in those states. Since petitioner is engaged in the transportation of commodities in interstate commerce it is required to meet the safety standards established by the Interstate Commerce Commission for contract and common carriers. Within the limitations of the types of commodities it transports petitioner holds itself out to the public as being available to all shippers desiring to use its services. It affirmatively appears from the record, however, that petitioner has never been certified as a common carrier by the Interstate Commerce Commission, and it is not required to carry commodities of any given class or classes even though requested to do so. Petitioner has no established rate schedules which are held out to the public and which are fixed and regulated by the Interstate Commerce Commission or any other regulatory agency. Petitioner is at liberty to negotiate rates and charges with its customers and the public generally. Its business is not conducted in accordance with a plan of operation approved by any governmental agency.
It is petitioner’s contention that it is exempt from the payment of sales tax on the tools, automotive parts, shop equipment and tire rentals used on and in connection with the vehicles employed in its transportation business under the exemption provision of the statute which is as follows:
“ * * * Also exempt are vehicles and parts thereof used to transport persons or property in interstate or foreign commerce.” [1]
The taxes in question are assessed for the period from September, 1959, through August, 1962. During this period there was in effect regulations adopted by Respondent *178 'Comptroller governing the exemption here in question, which regulations in substance restrict the exemption to vehicles licensed by a governmental agency as common carriers to transport or move either passengers or property across state lines, and parts and •supplies used directly thereon.
In the L. B. Smith Aircraft Corp. case,[2] •our Supreme Court had occasion to construe the exemption provision of the Sales Tax Law now under consideration. In that case the court held:
“We cannot say with certainty what the Legislature intended to exempt by using the language: parts of vehicles ‘‘used to transport passengers or property in interstate and foreign commerce.’ The broadest interpretation would include parts installed on any vehicle which at some time carried humans or property across a state line or to a foreign country. We think, however, when the entire statute is read and its basic purpose is considered, such a broad interpretation was not intended. It was the manifest purpose in enacting this law to tax as completely within its sphere as organic provisions would allow, e. g. Section 212.21(3). A common understanding of the language ‘passengers or property in interstate and foreign commerce’ would lead to the conclusion that it was used in its narrower sense and relates only to what is more generally referred to as common carriers.”
From the foregoing decision it appears that the exemption provided by the statute is available only to vehicles which are “more generally referred to as common carriers.” The Comptroller has placed an administrative interpretation upon the exemption provision of the statute by the adoption of regulations which restrict the exemption only to vehicles which have been licensed as common carriers by a governmental agency. It is conceded that appellant’s vehicles are not licensed as common carriers by any governmental agency, so the question presented for our decision is whether the regulations of the Comptroller constituting an administrative interpretation of the statute are valid and should be sustained.
The Legislature of Florida has failed to adopt a statutory definition of the term “common carrier.” We must therefore determine what is a “common carrier” as that term is referred to in the Supreme Court’s decision of Smith Aircraft, supra. A common carrier has been generally defined as “one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally. * * * The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently and hence he is regarded, in some respects, as a public servant. The dominant and controlling factor in determining the status of one as a common carrier is his public profession or holding out, by words or by a course of conduct, as to the service offered or performed. * * * To constitute a public conveyance a common carrier, it is not necessary that it come within the definition of a public utility so as to be subjected to the rules and regulations of a public utility commission.”[3]
One of the distinctive characteristics of a common carrier is that it undertakes to carry for all persons indifferently, within the limits of its capacity and the sphere of the business required of it, so that it is bound to serve all who apply and is liable for refusal, without sufficient reason, to do so.[4]
*179 In the Orlando Transit Co. case,[5] the Supreme Court of Florida held:
“The law makes it the duty of a common carrier, within the limits of its ability, to receive and carry all persons applying for transportation. The law makes it optional with a ‘for hire service’ to carry those of the general public applying to it for passage. 37 Am.Jur. 526. A ‘for hire service’ has no continuous or recurring carriage under contract unless made so by the consent of the parties.”
In his testimony before the hearing examiner the president of petitioner corporation admitted that his company is not required to carry commodities for all persons who may request transportation, although it holds itself out as available for that type of service. Petitioner is free to contract with whomever it pleases, is under no obligation to carry for all persons indifferently or to serve all who apply, and cannot be made liable for such refusal. Petitioner therefore appears to lack one of the essential characteristics of what is generally referred, to as a “common carrier.”
In the Baltimore Tank Lines case,[6] the. Court of Appeals of Maryland distinguished between common carriers and contract carriers in the following manner, to wit:
“ * * * A common carrier must serve all of the general public who seek its .service on an equal basis. It may not set aside part of its equipment for' certain customers to the exclusion of others. Its liability as to the freight it transports is that of an insurer. Its contracts usually consist of the terms and conditions in the uniform bill of lading plus the provisions of its published tariffs. A contract carrier on the other hand can devote equipment to the exclusive needs of one shipper. His liability is that of a bailee unless modified by special contract. He can guarantee a rate for a fixed period and so enable the shipper to bid on contracts to furnish the commodity to be hauled on the basis of a known freight charge over the period of the contract. He can offer special service, such as that at unusual hours or that of insuring complete performance of the shipper’s contract by personal attention to recurring need for shipments. He can become, to some extent, an integral part of the shipper’s organization.”
From the foregoing it is noted that one of the characteristics of a common carrier is that its contract usually consists of the terms and conditions in the uniform bill of lading, and its charges are based upon published tariffs. A similar conclusion was reached by the Supreme Court of New York in the Weiss Bros, case.[7]
The evidence in the record before us reveals without dispute that petitioner does not operate contractually under uniform bills of lading, nor does it base its charges upon published tariffs. It contracts separately with each of its customers to transport their commodities at an agreed rate based upon the cost of operation and what the traffic bears in each individual case. Its vehicles operate over both regular and irregular routes on irregular schedules. Charges for its services are neither submitted to nor approved by any regulatory agency of the state or federal government.
It is our conclusion that the vehicles owned by petitioner for which tax exemption is claimed are not what is more generally referred to as common carriers within the meaning and intent of that term as set forth in the decision of the Florida *180 Supreme Court in the L. B. Smith Aircraft Corp. case, supra. It is our further conclusion, and we so hold, that the administrative interpretation placed upon the exemption statute by the Comptroller as embodied in the regulations adopted by him, and which restrict the statutory exemption to vehicles licensed by a governmental agency as common carriers to transport or move either passengers or propertjr across state lines, is a reasonable and valid interpretation and is therefore sustained. The writ of certiorari is accordingly denied.
STURGIS, C. J., and CARROLL, DONALD K., J., concur.

. Section 212.08 (7), S\S.A.

. L. B. Smith Aircraft Corp. v. Green (Fla.1957), 94 So.2d 832.

. 9 Am.Jur., Carrier, Section 4, pp. 430-432.

.13 C.J.S. Carriers, § 3, p. 27.

. Orlando Transit Co. v. Florida Railroad and Public Utilities Commission (1948), 160 Fla. 795, 37 So.2d 321, 327.

. Baltimore Tank Lines v. Public Service Commission (1957), 215 Md. 125, 137 A.2d 187, 190.

. Weiss Bros. Stores, Inc. v. De Martis (1958), 14 Misc.2d 522, 179 N.Y.S.2d 723.