**Gail S. BRILL, James R. Whitley, III, and Ellis National Bank of Jacksonville, a national banking association, successor in interest to Jacksonville National Bank, as Co-Trustees of the Testamentary Trusts of Barry L. Green, deceased, Plaintiffs,**

v.

**INDIANAPOLIS LIFE INSURANCE COMPANY, a mutual insurance company chartered under the laws of Indiana, Defendants.**

No. 84–1–Civ–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

March 14, 1985.

William E. Kuntz and Timothy W. Volpe, Smith & Hulsey, Jacksonville, Fla., for plaintiffs.

Lawrence J. Hamilton, II, and Dana G. Bradford, II, Jacksonville, Fla., for defendants.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case came on to be heard on cross-motions for summary judgment. The defendant's motion was filed on October 2, 1984, and the plaintiffs responded in opposition on October 23, 1984. The plaintiffs' Motion for Summary Judgment was filed on October 3, 1984, and the defendant responded in opposition on October 15, 1984. A hearing was held on these motions on December 21, 1984.

This action was commenced by plaintiffs to recover as beneficiaries under two policies insuring the life of Barry L. Green. The policies, numbers 0846982 and 1005892, were issued by Indianapolis Life Insurance Company [hereinafter "defendant"]. Each policy contains a clause providing that the accidental death benefit to be paid will be doubled:

> If such proof also shows that the death was the result of an injury sustained while the insured was a fare-paying passenger in a public conveyance then being operated by a licensed common carrier for passenger service....

The facts relevant to the decedent's death are not disputed. The only issue remaining for the Court's determination is whether the accident falls within the purview of the above-stated clause requiring that the defendant pay the plaintiffs double the accidental benefit payments provided in the policies.

## FINDINGS OF FACT

At the hearing held on these motions, the parties agreed to the following facts:

1. On July 29, 1982, Mr. Barry L. Green [hereinafter "decedent"] died when the helicopter carrying him and three of his business colleagues, all executives with The Charter Company [hereinafter "Charter Company"] or its wholly-owned subsidiary, Charter Oil Company [hereinafter "Charter Oil"] crashed near Galway, Ireland.

2. The helicopter was to transport the decedent and his colleagues from the Ballynahinch Castle Hotel to the Shannon Airport. At the airport, they were to board a private company plane for a business flight to France.

3. The helicopter was owned by Irish Helicopters Ltd. [hereinafter "IHL"] and the pilot was an employee of IHL.

4. IHL is the sole helicopter air service company in Ireland and is a subsidiary of the national airline of Ireland.

5. IHL is licensed by the Irish government as a Class C authorization holder to carry passengers, cargo, and mail. As a Class C, IHL can provide only non-scheduled service, passengers receive no ticket and their baggage is not checked. The Irish government has the authority to regulate charges but has not done so. *See* Transcript of Motion for Summary Judgment [hereinafter "Tr."] at 21–22.

6. IHL charges its customers a flat rate per flying hour. Flying time begins when the helicopter leaves IHL's hangar and ends when the helicopter returns to IHL's hangar.

7. IHL regularly advertises its charter flight services to the public including advertisements in the Irish equivalent of the yellow pages, business and trade journals, as well as newspapers of general circulation.

8. Charter Company verbally leased the helicopter through LUQA, Inc., its wholly-owned subsidiary in charge of providing airplane and other travel related services to Charter Company.

9. The service provided to the decedent was not a part of IHL's contract business but was a part of its general passenger transportation business. (Tr. at 9–10). An example of IHL's contract business would be the lease of a helicopter for several months. *Id.*

10. On July 28, 1982, the evening before the flight, the helicopter had been piloted from Shannon Airport carrying one passenger. The pilot and the aircraft remained at Ballynahinch Castle Hotel overnight in anticipation of the early morning flight the next day.

11. IHL was to provide helicopter service for the specific flights to the airport (including picking the decedent up on his return the same day from France for transportation back to the hotel) and when each flight concluded, the helicopter was free to service other customers.

12. The helicopter was not hired for a specific length of time but for the transportation already reviewed.

## CONCLUSIONS OF LAW

The Court will examine these undisputed facts in the context of the provisions of the double accident benefit clause to determine whether the plaintiffs are entitled to the relief they seek. In order to fall within the purview of the clause, the plaintiffs must show that at the time of the accident: (1) the decedent was a fare-paying customer, (2) the IHL helicopter was being operated as a public conveyance, and (3) the IHL helicopter was a common carrier. *See* Exhibit A to plaintiff's Complaint at paragraph 2.

### *Fare-Paying Customer*

The first issue to be addressed in determining whether this accident falls within the purview of the double accident benefit clause is whether the decedent was a fare-paying customer of IHL at the time of the accident. The defendant's position is that under the agreement with IHL, the charge for the flight was computed solely on the number of flying hours and the size of the helicopter, not on a per passenger basis.

Since IHL did not charge on an individual basis for its service, the defendant concludes that a "rate" was paid to IHL for the flight rather than a "fare."

■ The Court agrees with plaintiffs that the defendant reads the term fare too narrowly. Terms used in an insurance policy are to be construed in light of the skill and experience of ordinary people. *Morrison Assurance Company v. School Board of Suwanee County*, 414 So.2d 581 (Fla. 1st DCA 1982); *see also Midwest Mutual Insurance Company v. Santiesteban*, 287 So.2d 665 (Fla.1973). In construing terms appearing in insurance policies, Florida courts commonly adopt the meaning of words contained in legal and non-legal dictionaries. *See Mikos v. Early*, 453 So.2d 402 (Fla.1984).

■ Fare is defined in *Webster's Third International Dictionary* as "[t]he price charged to transport a person or persons...." *Id.* at 824. Likewise, *Webster's Third New Twentieth Century Dictionary, Unabridged Second Edition* defines fare as "the sum paid or due for transportation...." *Id.* at 664. Construed in the light of the skill and experience of an ordinary person, the term fare as it appears in the clause of this policy, without further limitation, includes the pay arrangement in this case.

The helicopter flight was not gratuitously provided to the decedent. The Court is aware that an individual whose business flight is arranged and paid for by his employer will often board an air carrier without having actually handed over ticket fare. When a business concern arranges its employee's flight, any combination of pay arrangements may be made, depending on such variables as prior dealings with the particular carrier and group and other discount rates. *See, e.g., O'Connell v. Mutual of Omaha Insurance Company*, 6 Ill. App.3d 698, 286 N.E.2d 773 (1972). The clear import of the requirement that the insured be a fare-paying customer is that a sum be paid or promised to the air carrier in exchange for the transportation. The Court finds that in this case the decedent was to be transported to Shannon Airport in IHL's helicopter as a result of a sum having been paid or promised to IHL; therefore, the decedent was a fare-paying customer.

## Public Conveyance

The defendant relies on *Greyhound Rent-A-Car, Inc. v. Carbon*, 327 So.2d 792 (Fla. 3d DCA), *cert. denied*, 336 So.2d 1182 (Fla.1976), to support its contention that the double accident benefit clause is not applicable because the IHL helicopter was not a public conveyance. In *Carbon*, a couple were injured while driving a rented automobile. They sued the car rental agency under a Florida statute which provided personal injury benefits. The statute excluded recovery for injuries involving a motor vehicle used as a public conveyance. The trial court having found the statute applicable granted summary judgment and the car rental agency appealed.

In determining whether the rental car was a public conveyance, the appellate court referred to the definitions given the term by legal authorities. Based upon these definitions, the court concluded that the rental car was not a public conveyance "since it was not subject to indiscriminate use by the general public without limitation to particular persons, particular times or special terms." *Id.* at 793. If the Court were to accept this ruling on its face, then even a taxi service would not be a public conveyance.

The United States Supreme Court in *Terminal Taxi Cab Company v. Kutz*, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984 (1916), reviewed a taxi service which catered solely to certain hotels at specific times, limiting its service to the hotel's guests. The Supreme Court held that the public character of the taxi service was not removed by the operation's limitation to certain hotel guests. The Supreme Court distinguished this service from a car rental agency, stating that the passenger of the taxi was in "control" of the vehicle "as to contents, direction and time of use, although not so

far as indicated, in such a sense as to make the driver of the machine his servant." *Id.* at 254, 36 S.Ct. at 584.

The focus on control as the determinative factor in defining a public conveyance is evident in *Gillespie v. Traveler's Insurance Company,* 486 F.2d 281 (9th Cir. 1973). Mr. Gillespie was killed while a passenger on a helicopter leased by his employer. The arrangement was pursuant to the helicopter company's "contract" service as opposed to its air taxi service. In accordance with the written lease agreement, the plaintiff's employer had exclusive use of the helicopter for a two-month period with an option to extend. The employer provided the helicopter's fuel and lubrication as well as room and board for the pilot. The appellate court relied on the exclusivity of the lessee's use of the helicopter for the two-month period provided in the written lease agreement as its basis for finding the helicopter was not in use as a public conveyance at the time of the accident. *Id.* at 284.

The IHL helicopter in this case was not leased pursuant to a formal, written lease agreement for a specified period of time as was the case in *Gillespie.* In fact, the helicopter in this case was not "leased" at all. IHL was paid to transport the decedent and his colleagues from Ballynahinch Castle Hotel to Shannon Airport. Before and after that trip IHL was free to transport whomever it chose under IHL's terms. This arrangement is analogous to the taxi service distinguished in *Gillespie,* rather than the exclusive "contract" service which places the air carrier at the disposal of the lessee for an extended period of time. The facts agreed upon show that IHL offered "contract" service in addition to its air taxi service and that the decedent's flight was a part of this latter service.

The Court finds upon its review of the record in this case that neither the decedent nor his employer exercised the degree of exclusive control over IHL's helicopter which would warrant removal of the helicopter from the realm of a public conveyance. The service arranged between the two parties did place limitations on IHL's operation; however, the limitations as to time, place and passengers were those expected and necessary to effecting any taxi service. For purposes of that one, fateful flight to Shannon Airport, the decedent and his employer were in "control" of the helicopter as to contents, direction and time of use. Their control was not so pervasive, however, as to remove the public character from IHL's service. The Court finds that the helicopter was being operated as a public conveyance at the time of the accident.

### Common Carrier

As a general rule, air charter or taxi services have been judicially defined as common carriers. *See Speiser, Light Aircraft Litigation,* 13 Am.Jur.Trials § 15, at 579; *Krause, Helicopter Accident Litigation,* 22 Am.Jr.Trials § 42, at 612. The preeminate Florida case that defines common carrier states that a common carrier (1) holds itself out to the public generally for the transportation of persons or property for compensation, (2) undertakes to carry for all people indifferently, and (3) by its public profession or holding out by word or by course of conduct, represents itself as serving the public. *Ruke Transport Lines, Inc. v. Green,* 156 So.2d 176 (Fla. 1st DCA 1963).

The Court will briefly discuss the first and third elements, finding that upon a review of the facts in this case these elements have been met. IHL publicly advertises its air services in the Irish equivalent of the yellow pages, business and trade journals, as well as newspapers of general circulation. IHL is licensed by the Irish government as a Class C authorization holder able to carry passengers, cargo and mail for a fee on a non-scheduled basis. Significantly, IHL is the *sole* helicopter service in Ireland and is a subsidiary of the national airline of Ireland. Having found these two elements of a common carrier are present, the Court will examine whether IHL undertakes to carry for all people indifferently.

Relying on *Ruke*, the defendant alleges that the service provided the decedent was so particularly focused to meeting his needs that IHL at the time of the fateful flight was a contract rather than a common carrier. In *Ruke*, the state appellate court was presented with the issue of whether a trucking company was a common carrier so as to avail itself of *quoting Circle Express Company v. Commerce Commission*, 249 Iowa 651, 658, 86 N.W.2d 888, 893 (1957). Therefore, the Court finds that the IHL helicopter meets the three characteristics of a common carrier as set forth in *Ruke*.

■ In sum, this case is one of first impression, involving a transportation service reflecting the changes in our society and the business community. The faster pace of our lives has created a public demand for a quick, accessible means of getting about. The traditional taxi service has been unable to meet this demand in every circumstance. When it cannot, the public has taken to the air via air taxis which, though different in form and method than the taxi cab, provide the same type of service—transportation that caters to the individual passenger. Air taxis are increasingly becoming an integral part of our daily lives, transporting people between and within cities, airports and outlying areas. The helicopter in this case was servicing the public as both a common carrier and a public conveyance. To judicially find otherwise would be to ignore the realities of today's "public" transportation.

For the reasons stated in this Opinion, it is

ORDERED:

1. That plaintiffs' Motion for Summary Judgment, filed herein on October 3, 1984, is granted.

2. That defendant's Motion for Summary Judgment, filed herein on October 2, 1984, is denied.

3. That the Clerk of the Court shall enter summary judgment for the plaintiffs.