784 F.2d 1511
 Gail S. BRILL, James R. Whitley, II, and Ellis National Bank
of Jacksonville, a national banking association, successor
in interest to Jacksonville National Bank, as Co-Trustees of
the Testamentary Trusts of Barry L. Green, deceased,
Plaintiffs-Appellees,
v.
INDIANAPOLIS LIFE INSURANCE COMPANY, a mutual insurance
company chartered under the laws of Indiana,
Defendant-Appellant.
 No. 85-3633
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 March 24, 1986.
 
 Dana G. Bradford, II, Lawrence J. Hamilton, II, Ellen F.M. Posner, Jacksonville, Fla., for defendant-appellant.
 William E. Kuntz, Timothy W. Volpe, Jacksonville, Fla., for plaintiffs-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY, JOHNSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a summary judgment order in favor of the plaintiffs entered by the district court, 606 F.Supp. 265, in an insurance action.
 
 
 2
 The facts giving rise to this litigation are undisputed. We adopt the findings of fact of the district court. On July 29, 1982, Barry L. Green ("decedent") died when the helicopter carrying him and three of his business colleagues, all executives with The Charter Company or its wholly-owned subsidiary, Charter Oil Company, crashed near Galway, Ireland. The helicopter was to transport the decedent and his colleagues from the Ballynahinch Castle Hotel to the Shannon Airport. At the airport, they were to board a private company plane for a business flight to France.
 
 
 3
 The helicopter was owned by Irish Helicopters Ltd. ("IHL") and the pilot was an employee of IHL. IHL is the sole helicopter air service company in Ireland and is a subsidiary of the national airline of Ireland. IHL is licensed by the Irish Government as a Class C authorization holder to carry passengers, cargo, and mail. As a Class C carrier, IHL can provide only non-scheduled service. Passengers receive no ticket and their baggage is not checked.
 
 
 4
 IHL charges its customers a flat rate per flying hour. Flying time begins when the helicopter leaves IHL's hangar and ends when the helicopter returns to IHL's hangar. Although the Irish Government has the authority to regulate charges, it has not done so.
 
 
 5
 IHL regularly advertises its charter flight services to the public, including advertisements in the Irish equivalent of the yellow pages, business and trade journals, as well as newspapers of general circulation.
 
 
 6
 The Charter Company verbally leased the helicopter through LUQA, Inc., its wholly-owned subsidiary in charge of providing airplane and other travel related services. The helicopter was hired only for specific flights and not for a particular length of time. Thus, the service provided to The Charter Company was not a part of IHL's contract business, but rather, was a part of its general passenger transportation business. An example of IHL's contract business would be the lease of a helicopter for several months.
 
 
 7
 On July 28, 1982, the evening before the flight, the helicopter had been piloted from Shannon Airport carrying one passenger. The pilot and the aircraft remained at Ballynahinch Castle Hotel overnight in anticipation of the early morning flight the next day. IHL was to provide helicopter service for the specific flights to and from the airport (including picking the decedent up on his return the same day from France for transportation back to the hotel). When each flight concluded, the helicopter was free to service other customers.
 
 
 8
 This action was commenced by plaintiffs, Gail S. Brill, James R. Whitley, II, and Ellis National Bank, successor in interest to Jacksonville National Bank, to recover as beneficiaries under the double indemnity provisions of two policies insuring the life of the decedent. The policies were issued by the defendant, Indianapolis Life Insurance Company. Each policy contains a clause providing that the accidental death benefit to be paid will be doubled "[i]f such proof also shows that the death was the result of an injury sustained while the Insured was a fare-paying passenger in a public conveyance then being operated by a licensed common carrier for passenger service...." (emphasis added).
 
 
 9
 The only issue on appeal is whether the accident falls within the purview of the above clause requiring that the defendant pay the plaintiffs double the accidental benefit payments provided in the policies. In order to fall within the purview of the double indemnity provision, the plaintiffs must show that at the time of the accident: (1) the decedent was a fare-paying customer, (2) the IHL helicopter was being operated as a public conveyance, and (3) the IHL helicopter was a common carrier.
 
 1. FARE-PAYING CUSTOMER
 
 10
 The defendants position is that under the agreement with IHL, the charge for the flight was computed solely on the number of flying hours and the size of the helicopter, and not on a per passenger basis. Since IHL did not charge on an individual basis for its service, the defendant concludes that a "rate" was paid to IHL for the flight rather than a "fare."
 
 
 11
 We find that the defendant reads the term "fare" too narrowly. It is well settled that terms used in an insurance policy should be construed in light of the skill and experience of ordinary people. Morrison Assurance Co. v. School Board, 414 So.2d 581, 581 (Fla.Dist.Ct.App.1982) (citations omitted); Stewart v. State Farm Mutual Insurance Co., 316 So.2d 598, 599 (Fla.Dist.Ct.App.1975). In construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries. See Government Employees Insurance Co. v. Novak, 453 So.2d 1116, 1118 (Fla.1984).
 
 
 12
 The word "fare" has been defined as "the price charged to transport a person or persons...." Webster's Third New International Dictionary 824 (1966). The term "fare" has been further defined as "[a] transportation charge, as for a bus or taxi." The American Heritage Dictionary 476 (1969). Viewed in light of the skill and experience of an ordinary person, the term fare, as it appears in the double indemnity provision of the two policies, includes the pay arrangement in this case.
 
 
 13
 The helicopter flight was not gratuitously provided to the decedent. Rather, the transportation was provided in exchange for some form of payment made by The Charter Company. An individual whose business flight is arranged and paid for by his employer will often board an air carrier without having actually handed over ticket fare. When a business concern arranges its employee's flight, any combination of pay arrangements may be made, depending on such variables as prior dealings with the particular carrier and group and other discount rates. See, e.g., Florida East Coast Railway v. Booth, 148 So.2d 536, 537-38 (Fla.Dist.Ct.App.) (a transit pass issued by a railroad to its employees, as part of a collective bargaining agreement between the railroad and the employees' union, is issued for consideration and not as a gratuity), cert. denied, 155 So.2d 551 (Fla.1963). The clear import of the requirement that the insured be a "fare-paying customer" is that a sum be paid or promised to the carrier in exchange for the transportation of passengers. In this case the decedent was to be transported to Shannon Airport in IHL's helicopter as a result of a sum having been paid or promised to IHL; therefore, the decedent was a fare-paying customer.
 
 2. PUBLIC CONVEYANCE
 
 14
 The defendant relies on Greyhound Rent-A-Car, Inc. v. Carbon, 327 So.2d 792 (Fla.Dist.Ct.App.), cert. denied, 336 So.2d 1182 (Fla.1976) to support its contention that the IHL helicopter was not a public conveyance. In Carbon, a couple were injured while driving a rented automobile. They sued the car rental agency under a Florida statute which provided for personal injury benefits. The statute excluded recovery for injuries involving a motor vehicle used as a public conveyance.
 
 
 15
 In determining whether the rental car was a "public conveyance", the court referred to the definitions given the term by legal authorities. Based upon these definitions, the court concluded that the rental car was not a public conveyance since "it was not subject to indiscriminate use by the general public without limitation to particular persons, particular times or special terms." Id. at 793. On the contrary, the vehicle was rented by an individual for a particular length of time, governed by the special terms of the rental agreement.
 
 
 16
 In Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 60 L.Ed. 984 (1916) the Supreme Court analyzed whether the plaintiff, Terminal Taxicab Company, was an "agency for public use." About one-quarter of the plaintiff's business was under contracts with hotels. Pursuant to these contracts, the plaintiff agreed to furnish guests of the hotels with taxicabs and automobiles during certain hours of the day. The Supreme Court held that the public character of the plaintiff's hotel business was not removed by the limitation of service to hotel guests. In so holding, the Court stated:
 
 
 17
 No carrier serves all the public. His customers are limited by place, requirements, ability to pay and other facts.... The service affects so considerable a fraction of the public that it is public in the same sense in which any other may be called so. The public does not mean everybody all the time.
 
 
 18
 241 U.S. at 255, 36 S.Ct. at 584 (citations omitted).
 
 
 19
 The focus on the availability of a vehicle for public use as a determinative factor in defining "public conveyance" is evident in Gillespie v. Traveler's Insurance Co., 486 F.2d 281 (9th Cir.1973). Clinton Gillespie was killed while a passenger on a helicopter leased by his employer. In accordance with the written lease agreement, the decedent's employer had exclusive use of the helicopter for a two-month period with an option to extend the contract for up to seven months. Although the helicopter company provided the pilot, the employer was responsible for providing the helicopter's fuel and lubrication as well as room and board for the pilot. It should be noted that in addition to this "contract" service, the helicopter company also provided an "air taxi" service for public use throughout the state. The court relied on the exclusivity of the lessee's use of the helicopter for a period of two to seven months as its basis for holding that the helicopter was not in use as a "public conveyance" at the time of the accident.
 
 
 20
 Unlike the helicopter in Gillespie, the IHL helicopter was not leased pursuant to a written contract agreement for a specified length of time. In fact, the helicopter in the present case was not "leased" at all. IHL was paid to transport the decedent and his colleagues from Ballynahinch Castle Hotel to Shannon Airport. Before and after the trip, IHL was free to transport whomever it chose under IHL's terms. This arrangement is distinguishable from the exclusive contract service provided in Gillespie which placed the air carrier at the disposal of the lessee for an extended period of time.
 
 
 21
 In the present case, we find that neither the decedent nor his employer exercised the degree of exclusive control over IHL's helicopter which would suggest that it was not a "public conveyance" at the time of the accident. The service arranged between the two parties did place limitations on IHL's operation; however these limitations as to time, place and passengers were no different than those imposed on the taxi service discussed in Terminal Taxicab Co. For purposes of the one flight to Shannon Airport, the decedent and his employer had the exclusive use of the helicopter as to contents, direction and time of use. Their control was not so pervasive, however, as to negate the public character of IHL's service. We find that the helicopter was being operated as a public conveyance at the time of the accident.
 
 3. COMMON CARRIER
 
 22
 As a general rule, air charter or taxi services have been judicially defined as common carriers. 13 Am.Jur. Trials Sec. 15 (1967); 22 Am.Jur. Trials Sec. 42 (1975). In Ruke Transport Line, Inc. v. Green, 156 So.2d 176 (Fla.Dist.Ct.App.1963), the court stated that a general definition of "common carrier" is " 'one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services to the public generally.' " Id. at 178 (footnote omitted). The controlling factor in determining common carrier status is thus " 'the holding out by words or by a course of conduct, as to the service offered or performed.' " Id. (footnote omitted). The court also noted that a distinctive characteristic of the common carrier is that "it undertakes to carry for all persons indifferently ... so that it is bound to serve all who apply and is liable for refusal, without sufficient reason, to do so." Id. (footnote omitted).
 
 
 23
 Based upon a review of the facts in this case, we find that IHL holds itself out to the general public as being in the business of transportation for compensation. As the district court noted, IHL is licensed by the Irish government to carry passengers, cargo and mail for a fee. Moreover, IHL, a subsidiary of the national airline of Ireland, is the only carrier in Ireland to offer helicopter service. Finally, IHL advertises its air services in the Irish equivalent of the yellow pages, newspapers of general circulation, and business and trade journals. Having found that IHL meets the general definition of a common carrier, we must determine whether IHL undertakes to carry for all persons indifferently.
 
 
 24
 The defendant, relying on the definition of common carrier found in Ruke, argues that the service provided the decedent was so particularly focused to meeting the decedent's needs that IHL, at the time of the accident, was a contract rather than a common carrier. We disagree. First, as the district court found, the service provided the decedent was a part of IHL's general passenger service and not a part of its contract service. Second, as the district court noted, the record shows that the decedent's flight was undertaken on the terms and conditions available to the general public. The fact that, at the time of the accident, the carrier was transporting a particular group of customers does not render the service less public. See Terminal Taxicab Co., 241 U.S. at 254, 36 S.Ct. at 584 (an agency is none the less an agency for public use when it only conveys one group of customers in one vehicle). With an air taxi service, the particulars of departure time and location, the distance to be travelled, and destination will vary. Providing a public service that is customer-specific (a metropolitan taxi service) as opposed to route-specific (a metropolitan bus service) necessarily means that the common carrier will accommodate itself to the customer's particular needs in order to transport him. This does not negate the common carrier status. A common carrier need only carry all persons indifferently "within the limits of its capacity and the sphere of the business required of it ..." Ruke, 156 So.2d at 178 (footnote omitted). We therefore find that the IHL helicopter meets the definition of a common carrier as set forth in Ruke.
 
 
 25
 For the foregoing reasons, the decision of the district court granting summary judgment is
 
 
 26
 AFFIRMED.